[Nos. 19077-0-II; 19624-7-II;   Division Two.   March 7, 1997.]
19607-7-II; 19185-7-II.

THE STATE OF WASHINGTON, *Respondent,* v. ARTURO HERNANDEZ, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. RUBEN SOTO, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. JUAN GOMEZ DAVILA, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. LEOBARDO GILL, *Appellant.*

674

*Clayton R. Dickinson* and *Law Office of Clayton R. Dickinson; E. Allen Walker* and *Walker Bradshaw & Oaks, P.S.*; and *Nicholas George,* for appellants.

John W. Ladenburg, Prosecuting Attorney, and *John M. Neeb, Deputy,* for respondent.

SEINFELD, J. — In these consolidated appeals, Juan Davila, Leobardo Gill, and Arturo Hernandez challenge their convictions for the delivery of controlled substances. Ruben Soto appeals his conviction for conspiracy to deliver a controlled substance. The appellants all contend that the evidence was insufficient to establish that the object delivered was a controlled substance. In addition, Davila challenges a jury instruction. We find that the evidence was sufficient and that the jury instruction was neither a comment on the evidence nor a misstatement of the law. Thus, we affirm.

## DISCUSSION

In each of these cases, a pair of police officers at a distant location used high power binoculars to observe the defendant engage in what appeared to be a drug delivery. In each case, the customer and the merchandise was gone by the time the officers arrested the defendant, but the arresting officer found a substance on the defendant or on the defendant's accomplice that appeared similar to the

item delivered. In each case, the substance tested positive as an illicit drug. At each of the trials, the State introduced the controlled substance found on the defendant or on his accomplice as circumstantial evidence that the object the defendant delivered was also a controlled substance. At each trial, the police officers described their extensive experience in tracking and arresting persons involved in street level narcotic transactions. They also described the defendant's conduct at the time of the delivery and the appearance of the substance delivered.

## The Applicable Law

To find a person guilty of the unlawful delivery of a controlled substance, the trier of fact must find that the defendant (1) delivered a controlled substance and (2) knew that the substance delivered was a controlled substance. RCW 69.50.401(a)(1)(i). The defendants here confine their challenge to the sufficiency of the proof that the object delivered was a controlled substance.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Chapin*, 118 Wn.2d 681, 691, 826 P.2d 194 (1992). " 'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.' " *State v. Sanchez*, 60 Wn. App. 687, 693, 806 P.2d 782 (1991) (quoting *State v. Porter*, 58 Wn. App. 57, 60, 791 P.2d 905 (1990)). Circumstantial evidence is equally reliable as direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). This court must defer to the trier of fact on issues involving conflicting testimony, credibility of the witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

Circumstantial evidence and lay testimony may be sufficient to establish the identity of a drug in a criminal case. *In re Reismiller*, 101 Wn.2d 291, 294, 678 P.2d

323 (1984); *State v. Eddie A.*, 40 Wn. App. 717, 720, 700 P.2d 751 (1985). Further, a witness who demonstrates an expertise "acquired either by education or experience" in this area may give an opinion as to the identity of a substance. *State v. Hutton*, 7 Wn. App. 726, 731, 502 P.2d 1037 (1972); *see State v. Dominguez*, 992 F.2d 678, 681 (7th Cir. 1993) (circumstantial evidence establishing the identity of an illegal drug may include "lay-experience based on familiarity through prior use, trading, or law enforcement"). The opinion need not be based upon expert chemical analysis. *See United States v. Schrock*, 855 F.2d 327, 334 (6th Cir. 1988) (chemical analysis identification evidence is not always practical given that "[i]llegal drugs will often be unavailable for scientific analysis because their nature is to be consumed").

■ Federal courts have found evidence that a defendant was in possession of a controlled substance at the time of an arrest and engaged in an apparent drug sale activity shortly before the arrest sufficient to support a reasonable inference that the defendant delivered a controlled substance on the date of the apparent delivery. *United States v. DeFundora*, 893 F.2d 1173, 1176, 113 A.L.R. Fed. 873 (10th Cir. 1990). Fact finders regularly rely on a similar inference when addressing the intent element of a possession with intent to deliver charge, i.e., a fact finder can reasonably infer that a defendant possessed a controlled substance with intent to deliver based on evidence that, before the arrest, he or she delivered a substance to another person. *State v. Brown*, 68 Wn. App. 480, 484, 843 P.2d 1098 (1993); *see also State v. Cobelli*, 56 Wn. App. 921, 925, 788 P.2d 1081 (1989) (insufficient evidence to infer intent where "the officers saw nothing exchanged and no suspicious gestures"). Likewise, it is reasonable to infer that a defendant just delivered cocaine when, minutes later, police recover bindles of cocaine in his possession.

Further, federal courts have rejected sufficiency challenges to narcotics convictions where the government of-

fered various combinations of the following circumstantial evidence to prove that the item at issue was a controlled substance: the price paid for the substance, the physical appearance of the substance and its packaging, behavior by the defendant characteristic of a drug sale, the furtive nature of the transaction, testimony by government witnesses who have purchased and used narcotics supplied by defendant before, and the location of the delivery in an area known for the availability of a particular kind of drug. *Dominguez,* 992 F.2d at 681; *United States v. Brown,* 887 F.2d 537, 542 (5th Cir. 1989); *United States v. Scott,* 725 F.2d 43, 45-46 (4th Cir. 1984); *Toliver v. United States,* 224 F.2d 742, 745 (9th Cir. 1955).

The defendants cite *Eddie A.,* 40 Wn. App. 717, as authority for their position that the circumstantial proof here was insufficient. Eddie was convicted in juvenile court of unlawfully contracting to deliver to a classmate a controlled substance, and then delivering a counterfeit controlled substance to her. *See* RCW 69.50.401(c). The State had not offered into evidence any substance, controlled or uncontrolled. It provided only the purchaser's testimony that the defendant had indicated to her that he would deliver a controlled substance but instead delivered "Pamprin." *Eddie A.,* 40 Wn. App. at 718.

On appeal, Eddie argued that the State had failed to prove the nature of the substance delivered. The State contended that it did not need to prove the identity of the delivered substance, only that "some substance was actually delivered." In reversing the conviction, the *Eddie A.* court stated that RCW 69.50.401(c) requires proof of the nature of the substance delivered and that the purchaser's bare statement that the substance was Pamprin failed to prove that element. *Eddie A.,* 40 Wn. App. at 720.

The *Eddie A.* opinion identifies several items of circumstantial evidence that might be sufficient to prove the identity of a substitute uncontrolled substance. *Eddie A.,* 40 Wn. App. at 720-21; *see* RCW 69.50.401(c). The list, contrary to the defendant's argument, is not exclusive. Fur-

ther, some of the suggested evidence would be inapplicable to a delivery of a *controlled* substance case. Thus, it would be inappropriate to use the *Eddie A.* court's list of evidence that would support a conviction for delivery of a counterfeit controlled substance to measure the sufficiency of the evidence here.

■ As sufficiency of the evidence analysis, by its terms, is fact sensitive, we address each case in more detail below.

### State v. Gill

A jury convicted Gill of two counts of unlawful delivery of a controlled substance (cocaine). The arresting officer, Officer Miller, testified that he was investigating drug activity in an area known to be "the hub of all powder cocaine [and] black tar heroin street level sales." The officer also described, based on his knowledge and experience, the modus operandi of drug peddlers in this area and explained that powder cocaine was packaged differently and was lighter in color and a different consistency than black tar heroin.

Officer Miller testified that during the surveillance he saw Gill showing a passerby "a number of small white objects" cupped in his hand that were consistent in size and packaging with "loosely packaged bindle[s] . . . of cocaine." The first sale took place when a white male spoke briefly with Gill and then gave Gill money in exchange for a small object.

Following still another contact between Gill and a pedestrian, a woman the officer knew to be a drug user contacted Gill. After a short conversation, Gill removed from his pants pocket a plastic bag containing "several small white objects." He then exchanged several of these objects for four or five paper money bills. Gill counted the money, put it in his pocket, and entered a nearby soup kitchen.

Officer Miller testified that he arrested Gill several minutes later as he left the soup kitchen. The police

recovered two bindles of powder cocaine from Gill's hand. The bindles appeared to be identical to the ones Gill had exchanged for money. The police never recovered the packages that Gill sold to the buyers.

There is sufficient evidence to uphold both of Gill's delivery convictions. Although the arresting officers could not say with certainty that the substance Gill delivered to the two customers was cocaine, abundant evidence supports the conviction. The appearance of the packages delivered to the buyers was consistent with powder cocaine; the transactions took place in an area of town frequented by powder cocaine peddlers; Gill was engaged in behavior characteristic of drug dealing; one of the sales was to a person known by the arresting officer to be a drug addict; the arresting officer saw white bindles during the deals that appeared similar to the bindles Gill possessed at the time of his arrest; and the substance on Gill's person at the time of his arrest had been tested and determined to be cocaine.

### State v. Hernandez

Hernandez was convicted of two counts of unlawful delivery of a controlled substance. On appeal, he challenges only count one, the delivery to a white male.

The police arrested Hernandez and an accomplice, Juan Acosta-Garcia, after observing them engage in two drug transactions. At trial, Officers Palmer and Krause described their observations. They saw a white male exit a van and contact Hernandez. After a brief conversation, Hernandez held out a gray "golf-ball-sized plastic bag." The buyer quickly exchanged some money for "a small white object" that Hernandez had removed from the gray bag. After this transaction, Hernandez transferred the bag to Acosta-Garcia, who put it down the front of his pants.

A short time later, a woman approached Hernandez and exchanged money for "something small." The officers

then ceased their surveillance, ran down the stairs, and rode their mountain bikes to the location where Hernandez and Acosta-Garcia were standing. The officers arrested and searched both men. Their search of Acosta-Garcia produced $96 and a gray plastic bag containing nine small white bindles of cocaine that were consistent in appearance with the item that Hernandez delivered to the white male. The bag also contained one larger white bindle of cocaine. They found no narcotics, only $15, on Hernandez.

The officers testified that they had extensive experience with and knowledge about the drug trade, particularly as it was practiced in this particular area. Officer Palmer also described the differences in appearance and packaging between powder cocaine and black tar heroin and explained that a small bindle of cocaine usually sold for $15 to $20.

Acosta-Garcia, who had accepted a plea bargain, also testified. He admitted that he possessed a bag containing bindles of cocaine when he was arrested but denied that he and Hernandez had been selling drugs together. Hernandez took the stand and denied any wrongdoing.

Hernandez claims the evidence was insufficient to prove that he delivered cocaine. We disagree. This evidence and the reasonable inferences from this evidence are sufficient to prove, beyond a reasonable doubt, that the substance delivered by Hernandez was cocaine. Police officers familiar with the drug trade in this particular area and knowledgeable about how drug dealers work testified that the area where the transaction took place was known for the availability of cocaine. They described activity by Hernandez and Acosta-Garcia characteristic of a drug sale, and the exchange of small white packages for money. They recovered from Hernandez money sufficient to purchase one bindle of cocaine. Acosta-Garcia admitted that the gray bag recovered from his person contained cocaine. A chemist testified that the bag recovered from Acosta-

Garcia contained nine similarly packaged bindles of cocaine.

### State v. Soto & Davila

Soto and Davila were each convicted of multiple drug related charges. Soto challenges only count one, conspiring with Davila to deliver heroin. Davila appeals his convictions on three counts of delivering a controlled substance.

Police officers arrested Soto and Davila after watching them engage in three drug transactions. At trial the officers testified as to their observations. In the first transaction, they saw a woman contact and converse with Soto and Davila. Davila then pulled out a "small dark object" from his pants pocket and handed it to Soto. Soto delivered the object to the woman and received money from her. Soto gave the money to Davila.

Next, a man who had accompanied the woman into the area approached Soto. Soto handed him an object in exchange for money. Soto again handed Davila the money.

A short time later, another man approached Soto. They spoke and then Davila handed Soto another "small dark object." Soto exchanged the object for currency from the third buyer.

The police arrested Soto and Davila. Upon searching Davila, they recovered three bindles of heroin and $160 in cash. The police recovered $44 in cash and $21 in food coupons from Soto.

The arresting officers testified about their extensive experience surveilling drug peddling operations in downtown Tacoma. They explained that drug dealers often work in pairs—one holding the drugs and money while the other makes the sales—and that the average price of a bindle of heroin was $20 or less. The officers also explained that the area in which the transactions took place was known for the availability of black tar heroin, and they described the differences between cocaine and black tar heroin in color, consistency, and packaging.

This evidence, viewed in the light most favorable to the State, was sufficient to prove that Soto, with intent to deliver cocaine, agreed with Davila to accomplish this act and took a substantial step to accomplish the agreement, in violation of RCW 69.50.407. The evidence is also sufficient to prove that the substance that Soto delivered was heroin and that Davila, acting as an accomplice to Soto, participated in three heroin deliveries.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON, C.J., and BRIDGEWATER, J., concur.