[No. 32129-7-II.  Division Two.  June 29, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. MACK CLARANCE COLQUITT, *Appellant*.

*Mary Katherine Young High*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

¶1 BRIDGEWATER, J. — Mack Clarance Colquitt appeals his conviction for possession of a controlled substance, cocaine, following his termination from a drug court program. The agreement Colquitt entered into to participate in drug court was neither a stipulation that the substance in the underlying charge was a controlled substance nor a stipulation to the sufficiency of the evidence. And, although he agreed that the police report that included a field test of the substance could be admitted, there were no laboratory test results. We hold that the police report and field test were not sufficient evidence of a controlled substance. We reverse and remand to vacate the conviction.

¶2 In September 2002, subsequent to an arrest on an unrelated charge, a corrections officer searched Colquitt's clothing during the booking process at the Pierce County jail and found a small plastic bag with several white, rock-like items in his rear pants pocket. The arresting officer then examined the items; in his report, he stated that the substance "appeared to be 'rock cocaine.'" Clerk's Papers (CP) at 59. He then conducted a field test, which tested positive for the presence of cocaine. Having already been given his *Miranda*[1] rights, Colquitt stated that he did not want to make a statement regarding the substance.

¶3 That same day, the State charged Colquitt with unlawful possession of a controlled substance. Colquitt then filed a petition to participate in a drug program, which the trial court granted.[2] Colquitt signed an agreement in which the trial court promised to dismiss the unlawful

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] We are not asked to examine the underlying authority for drug court, but we note that it is a specialized deferred prosecution wherein the prosecution does not proceed and the information is dismissed upon successful completion. The pertinent statute is RCW 2.28.170. The statute does not specify the documents required or the procedures to be followed in contrast to chapter 10.05 RCW, the deferred prosecution statute used in district court for substance abuse.

possession charge against him if he successfully completed the drug program. But if Colquitt failed to complete the program, he agreed to proceed with a bench trial based solely on the facts in the police report *and the laboratory reports*. The State never conducted any laboratory tests of the items found on Colquitt.

¶4 In his petition to participate in drug court, Colquitt waived (1) the right to a speedy trial under CrR 3.3, (2) the right to a public trial by an impartial jury, (3) the right at trial to hear and question the witnesses who testify against him, (4) the right to have witnesses testify for him, (5) the right to testify at trial, (6) the right to contest the stop and/or the search and/or the voluntariness of any statement he may have given in his case, and (7) the right to good behavior release on sanction/contempt time served while in drug court. While Colquitt stipulated to a bench trial based solely on the police report and the laboratory reports, he did not stipulate to the sufficiency of the facts contained in these reports to support a conviction. Nor did he ever admit to possessing cocaine. Furthermore, the waiver indicates that the defendant must waive the right to public trial by a jury "in the county where the crime is *alleged* to have been committed." CP at 14 (emphasis added). The use of the term "alleged" in the drug court petition form indicates that the parties to the agreement did not consider Colquitt to have admitted guilt. CP at 14.

¶5 Because the statute addressing drug courts does not mandate forms or procedures, counties are free to develop their own forms. Looking to chapter 10.05 RCW for guidance, we note that Pierce County's forms do not incorporate the safeguards of the deferred prosecution statute. But, the drug court statute essentially authorizes a deferred prosecution. Pierce County's agreement does not require a confession and stipulation for entry into drug court, wherein the defendant would freely agree and admit each allegation and stipulation contained in the petition. Nor is there an additional stipulation that the confession and the police reports constitute proof beyond a reasonable doubt

that the defendant was guilty of the offense charged and that the defendant has no affirmative defense to the charge. These agreements would have avoided any question of the identity of the controlled substance. These additional agreements are consistent with those agreements in the deferred prosecution statute in district court under chapter 10.05 RCW.

¶6 Colquitt failed to comply with the conditions required to remain enrolled in the drug program, and the trial court terminated his enrollment. Based solely on the evidence contained in the police report, the trial court found Colquitt guilty of unlawful possession of the controlled substance, cocaine.

## ANALYSIS

■ ¶7 Colquitt argues that the evidence was insufficient to support his conviction of unlawful possession of the controlled substance, cocaine. In support of this argument, Colquitt notes that the State did not conduct a laboratory test and, therefore, the court did not have any laboratory reports before it. The police report, the only evidence offered to establish the identity of the substance, contains a statement that the officer thought the substance appeared to be cocaine and that the substance tested positive in a field test for cocaine. We agree with Colquitt that speculation and an unverified field test, with nothing more, are insufficient to support a conviction.[3]

■ ¶8 Colquitt's conviction in drug court can be compared to previous cases involving deferred prosecution under chapter 10.05 RCW. *State v. Melick*, 131 Wn. App. 835, 844-45, 129 P.3d 816 (2006) (the court "may apply the principles of chapter 10.05 RCW to drug court prosecutions" (citing *State v. Cassill-Skilton*, 122 Wn. App. 652,

---

[3] Because we hold that there was insufficient evidence, we do not address the agreement's stated premise that "laboratory reports" will also be admissible. CP at 14. This notion posits that laboratory tests would be done, which they were not. But Colquitt does not argue reliance upon this notion and presents only an argument based upon sufficiency.

658, 94 P.3d 407 (2004) (although drug court statute contains no provisions for operating the program, the court can use chapter 10.05 RCW for guidance))). In deferred prosecution cases where the defendant stipulates to admission of police reports but does not stipulate to guilt, the trial court can use the police report to find the defendant guilty only "if the evidence therein supports conviction." *State v. Shattuck*, 55 Wn. App. 131, 134, 776 P.2d 1001 (1989). The State, therefore, still retains the burden of proof. *Shattuck*, 55 Wn. App. at 135.

¶9 Colquitt never stipulated to the sufficiency of the evidence presented in the police report. By contrast, for a defendant to qualify for a deferred conviction in district court, he is required by statute not only to stipulate to the admissibility of police reports but also to the sufficiency of the facts contained therein to support a finding of guilt. RCW 10.05.020. Before RCW 10.05.020 required a stipulation to the sufficiency of the facts, the court was not foreclosed from examining the sufficiency of the evidence. *Abad v. Cozza*, 128 Wn.2d 575, 587-88, 911 P.2d 376 (1996); former RCW 10.05.020 (1985), *modified by* Laws of 1996, ch. 24, § 1 (inserting a requirement for a stipulation to the sufficiency of the facts in subsections (2) and (3)), *modified by* Laws of 2002, ch. 219, § 7. We can examine the sufficiency of the evidence in this case. Colquitt did not stipulate to the sufficiency of the evidence, and a drug court agreement, like a deferred prosecution, is not tantamount to a guilty plea. *See Abad*, 128 Wn.2d at 579 (citing *State v. Higley*, 78 Wn. App. 172, 187, 902 P.2d 659, *review denied*, 128 Wn.2d 1003 (1995)).

¶10 Nevertheless, the State argues that Colquitt waived the right to challenge the validity of the field tests when he stipulated to the admissibility of the police report and faults him for raising the issue of sufficiency for the first time on appeal. Two factors are evident. Colquitt did not stipulate to the sufficiency of the evidence, even though he waived his right to testify or call any witnesses on his behalf. And, although he could have challenged the suffi-

ciency of the evidence, sufficiency may be raised for the first time on appeal. RAP 2.5(a)(3); *City of Seattle v. Slack*, 113 Wn.2d 850, 859, 784 P.2d 494 (1989) ("Due process requires the State to prove its case beyond a reasonable doubt; thus, sufficiency of the evidence is a question of constitutional magnitude and can be raised initially on appeal." (citing *State v. Baeza*, 100 Wn.2d 487, 488, 670 P.2d 646 (1983))). Review by this court is appropriate.

¶11 Due process requires the State to prove beyond a reasonable doubt all the necessary facts of the crime charged. *State v. Hundley*, 126 Wn.2d 418, 421, 895 P.2d 403 (1995) (citing *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Acosta,* 101 Wn.2d 612, 615, 683 P.2d 1069 (1984)). Evidence is sufficient to support a conviction when, viewed in the light most favorable to the State, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Bryant*, 89 Wn. App. 857, 869, 950 P.2d 1004 (1998) (citing *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990)), *review denied*, 137 Wn.2d 1017 (1999). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all inferences that reasonably can be drawn from that evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citing *State v. Theroff*, 25 Wn. App. 590, 593, 608 P.2d 1254, *aff'd*, 95 Wn.2d 385, 622 P.2d 1240 (1980)). Nevertheless, the existence of a fact cannot rest upon guess, speculation, or conjecture. *State v. Hutton*, 7 Wn. App. 726, 728, 502 P.2d 1037 (1972) (citing *State v. Carter*, 5 Wn. App. 802, 490 P.2d 1346 (1971), *review denied*, 80 Wn.2d 1004 (1972)).

¶12 Generally, a chemical analysis is not vital to uphold a conviction for possession of a controlled substance. *See State v. Hernandez*, 85 Wn. App. 672, 675, 935 P.2d 623 (1997) (circumstantial evidence and lay testimony may be sufficient to establish the identity of a drug in a criminal case (citing *In re Pers. Restraint of Reismiller*, 101 Wn.2d 291, 294, 678 P.2d 323 (1984); *State v. Eddie A.*, 40 Wn. App. 717, 720, 700 P.2d 751 (1985))). In *Hernandez*, this

court found sufficient evidence in several delivery or possession with intent to deliver cases in which officers provided detailed testimony about such things as: (1) their expertise in identifying drugs and drug-sale behaviors, (2) standard drug prices, (3) their observations of behavior consistent with drug sales, (4) the drug-using behavior of the persons contacting defendants, (5) the known drug areas in which the defendants were observed, (6) discovery of materials on the defendants consistent with those they saw defendants deliver, and (7) discovery of money in amounts consistent with drug sales. *Hernandez*, 85 Wn. App. at 678-82. The State also presented laboratory tests demonstrating that the materials actually found on some of the defendants were, in fact, controlled substances. *Hernandez*, 85 Wn. App. at 679-81.

¶13 In *United States v. Dominguez*, 992 F.2d 678, 681 (7th Cir.), *cert. denied*, 510 U.S. 891 (1993), the court stated that "as long as the available circumstantial evidence establishes its identity [as a controlled substance] beyond a reasonable doubt[,] [c]ircumstantial evidence establishing identification may include . . . lay-experience based on familiarity through prior use, trading, or law enforcement." (Citations omitted.) The *Dominguez* court, however, emphasized that when the record lacked indicia as to what factors a Drug Enforcement Administration agent considered in determining the identification of a substance, the prosecution failed to establish the identity of that substance. *Dominguez*, 992 F.2d at 681-82.

¶14 In *State v. Roche*, 114 Wn. App. 424, 59 P.3d 682 (2002), Division One of this court reversed a conviction for possession of a controlled substance, even with a police officer's testimony and a positive field test for methamphetamine. *Roche*, 114 Wn. App. at 431, 440. Roche appealed his conviction after it was discovered that the State crime lab chemist who tested Roche's substance tampered with evidence to hide his own heroin addiction. *Roche*, 114 Wn. App. at 428. The officer's testimony and a positive field test were inadequate for the State to try or sentence the defendant;

therefore, the court reversed the conviction. *Roche*, 114 Wn. App. at 440.

¶15 On the other hand, independent evidence provided to the trial court can be sufficient to find that a substance is cocaine beyond a reasonable doubt, even without reliable laboratory reports. *See, e.g., In re Pers. Restraint of Delmarter*, 124 Wn. App. 154, 163-64, 101 P.3d 111 (2004). For example, in *Delmarter*, the court upheld Delmarter's conviction for possession of cocaine even after it was discovered that the same crime lab chemist in the *Roche* case tested Delmarter's evidence. *Delmarter*, 124 Wn. App. at 157. In *Delmarter*, however, not only did a field test support Delmarter's conviction but Delmarter admitted that he had in fact possessed cocaine. *Delmarter*, 124 Wn. App. at 163-64. Explicitly distinguishing the facts in *Roche*, the *Delmarter* court weighed the additional evidence of the confession in affirming the conviction. *Delmarter*, 124 Wn. App. at 163 ("Roche did not admit that the substances found in his home were methamphetamines, despite a positive field test[.]") Even without laboratory results, an independent field test and a confession are sufficient to support a conviction for possession of a controlled substance.

¶16 Colquitt's fact pattern is more similar to *Roche* than *Delmarter* as Colquitt did not confess that the item in his possession was cocaine. In *Roche*, despite the other evidence which pointed to a controlled substance, Division One reversed. *Roche*, 114 Wn. App. at 440. A search at Roche's home disclosed the following: a pouch containing a substance that looked like methamphetamine, along with a razor blade and a paper rolled into a device commonly used to ingest drugs; several baggies of powdery substance that appeared to be methamphetamine; a ledger of drug sales; a scale; and $3,000 in cash. *Roche*, 114 Wn. App. at 431. At trial, a deputy testified that the substance: (1) looked like methamphetamine, (2) was packaged in a manner common in the methamphetamine trade, and (3) tested positive for methamphetamine in a field test. *Roche*, 114 Wn. App. at

431-32. In addition, the chemist testified that the substances were methamphetamine. *Roche*, 114 Wn. App. at 432.

¶17 After learning of the chemist's drug use and possible evidence tampering, Roche appealed his conviction. *Roche*, 114 Wn. App. at 433. The State argued that Roche was not entitled to a new trial because the new evidence of the chemist's incompetence would not change the verdict at trial. *Roche*, 114 Wn. App. at 433. Division One disagreed. *Roche*, 114 Wn. App. at 440. The court held that even though the evidence indicated that the chemist only tampered with heroin samples, untrustworthy crime laboratory analysis evidence for methamphetamine, even in light of the officer's testimony and positive field test, would have prevented the defendant from being tried at all. *Roche*, 114 Wn. App. at 439-40.

¶18 In response to the chemist's misconduct, the Snohomish County Prosecutor's Office issued an internal memo discussing the sufficiency of evidence required to uphold a conviction for possession of a controlled substance in all of its cases involving the abusing chemist. *Roche*, 114 Wn. App. at 439. The conclusion pertinent to our consideration was that there must be a good confession and a positive field test to meet the sufficiency test. *Roche*, 114 Wn. App. at 439.[4] Adopting this reasoning, the court vacated Roche's conviction. *Roche*, 114 Wn. App. at 447.

¶19 A challenge to the sufficiency of the evidence, by its terms, is fact sensitive. *Hernandez*, 85 Wn. App. at 678. The facts supporting Colquitt's conviction are even less indicative of guilt than those in *Roche*. For example, in *Roche*, the prosecutor had a strong circumstantial case, including a positive laboratory analysis corroborating the field test, even if its authenticity was questioned. *Roche*, 114 Wn. App. at 437-38. Here, in contrast, the State did not send Colquitt's sample to the crime laboratory for any verification. In *Roche*, the police found the unidentified

---

[4] While the facts in *Roche* outlined a requirement for both a confession and a positive field test, we do not indicate that a confession is mandatory.

substance with a scale, drug sale ledgers, and $3,000 in cash. *Roche*, 114 Wn. App. at 431. Here, the police found only several white, rock-like items in Colquitt's pants pocket. The government's failure to prove the identity of the substance underlying a drug conviction creates a significant problem, as it casts doubt on an essential element of the crime.[5] *Dominguez*, 992 F.2d at 682.

¶20 Despite this problem, the dissent posits that "the uncontroverted evidence was sufficient." Dissent at 803.[6] We disagree with the dissent for the following reasons:

¶21 First, we agree with the dissent that lay testimony and circumstantial evidence may be sufficient to establish the identity of a controlled substance. As a matter of fact, we specifically state that circumstantial evidence may be sufficient (citing *Delmarter*, 124 Wn. App. at 163-64 (even without a laboratory test, an independent field test and confession support a conviction for possession of a controlled substance); *Hernandez*, 85 Wn. App. at 675 (circumstantial evidence and lay testimony may be sufficient to establish the identity of a controlled substance); and *Dominguez*, 992 F.2d at 681 (circumstantial evidence establishing a controlled substance beyond a reasonable doubt may include lay experience based on familiarity through prior use, trading, or law enforcement)).

¶22 But the problem here is the paucity of information supporting the officer's identification of the white, rock-like items. The evidence here only demonstrates that the officer's visual identification of the items was based on his conjecture, at best. *See* Michael D. Blanchard & Gabriel J.

---

[5] To support a conviction for unlawful possession of a controlled substance, the State has the burden to present sufficient evidence to show the defendant had unlawful possession of a controlled substance. RCW 69.50.401.

[6] We do not understand the dissent's use of the adjective "uncontroverted." Colquitt had no means to controvert the evidence at trial because he had waived (1) the right at trial to hear and question any witness who testified against him, (2) the right to have witnesses testify for him, and (3) the right to testify at trial.

Regardless of whether or not Colquitt controverted the evidence, the State still has the burden to present sufficient evidence to show that he unlawfully possessed a controlled substance. Therefore, we examine the sufficiency of the evidence.

Chin, *Identifying the Enemy in the War on Drugs: A Critique of the Developing Rule Permitting Visual Identification of Indescript White Powder in Narcotics Prosecution*, 47 AM. U. L. REV. 557, 597 (1998). The record is devoid of evidence of the officer's experience and training that would allow him to properly identify the items as cocaine.

¶23 From this and other statements, the dissent concludes that Colquitt is mounting "an untimely challenge to his newly-claimed-on-appeal lack of a foundation for the officer's field observation and test of the cocaine." Dissent at 808. But Colquitt is not challenging the foundation of the officer's opinion; instead, he is challenging the sufficiency of the circumstantial evidence.[7]

¶24 Circumstantial evidence must prove the identity of the substance beyond a reasonable doubt. Whether the State has met its burden of establishing the identity of the items depends on a nonexhaustive list of factors, including: (1) testimony by witnesses who have a significant amount of experience with the drug in question, so that their identification of the drug as the same as the drug in their past experience is highly credible; (2) corroborating testimony by officers or other experts as to the identification of the substance; (3) references made to the drug by the defendant and others, either by the drug's name or a slang term commonly used to connote the drug; (4) prior involvement by the defendant in drug trafficking; (5) behavior characteristic of use or possession of the particular controlled substance; and (6) sensory identification of the substance if the substance is sufficiently unique. *State v. Watson*, 231 Neb. 507, 514-17, 437 N.W.2d 142 (1989).

¶25 Had the State introduced more than simply the officer's statement that the substance "appeared to be

---

[7] The dissent claims that because Colquitt left this evidence uncontroverted below, "[i]t was for the trial court, not us, to weigh [its] sufficiency." Dissent at 809. First, the waiver Colquitt signed prevented him from testifying or presenting any evidence on his behalf. Second, Colquitt is not required to contest sufficiency at the trial court. He is entitled to challenge the sufficiency of the evidence for the first time on appeal. It is within our jurisdiction to examine sufficiency of the evidence, even when a defendant has not challenged it below.

'rock cocaine,'" we could evaluate whether the officer based his visual identification of the items on more than conjecture. CP at 59. As it is, we cannot draw a conclusion based on more than the officer's bald statement, which by itself is insufficient. And when we reach a conclusion on the sufficiency of the evidence that is different from the trial court's conclusion, it is within our power to reverse the trial court.

¶26 After terminating Colquitt from the drug court program, the trial court conducted his trial. The entirety of Colquitt's trial was as follows: "We have incident report 02260046. The substance of the report and the narrative of page three of three, the attachments, are sufficient for a finding of guilty." Report of Proceedings (June 21, 2004) at 15. The trial court postponed sentencing until counsel accurately calculated Colquitt's standard range.

¶27 The dissent also asserts that Pierce County typically neither requests a laboratory test of the controlled substance nor presents a laboratory report in connection with its drug court program. If so, then Pierce County risks a failure to present sufficient evidence to establish the identity of a controlled substance at a defendant's trial. A confession and a stipulation to the sufficiency of the evidence would avoid this problem.

¶28 Finally, if an officer's opinion and field test, without more, is sufficient in this case to prove the identity of a controlled substance beyond a reasonable doubt, then an officer's opinion and field test, without more, certainly will be sufficient in other trials. Such an evidentiary standard would eliminate the need for laboratory tests, laboratory reports, or forensic chemists.

¶29 Colquitt's conviction, with no laboratory results or other significant, sufficient corroborating evidence, must be reversed and the matter remanded to vacate the judgment.

VAN DEREN, A.C.J., concurs.

¶30 HUNT, J. (dissenting) — I respectfully dissent from the majority's holding that the officer's visual observations

and positive field test were insufficient evidence that the controlled substance Colquitt possessed was cocaine. I would hold that the uncontroverted evidence was sufficient. I would affirm.

## I. BACKGROUND

¶31 During the jail booking process following Colquitt's arrest, a corrections officer found a small plastic bag with several small, white, rock-like items in Colquitt's rear pant pocket, which items "appeared [to the officer] to be 'rock cocaine.'" Clerk's Papers (CP) at 59. A field test of these suspected cocaine "rocks" tested positive for cocaine. CP at 55. The State charged Colquitt with unlawful possession of rock cocaine.

¶32 Colquitt filed a petition to participate in a drug court program, which the trial court granted. As a condition of drug court participation, Colquitt agreed in writing that if he failed to complete the program, he would waive his rights to a jury trial, to contest any statement, to testify at trial, and to call or cross-examine witnesses, and he would proceed with a bench trial based solely on the facts in the police and laboratory reports.[8]

¶33 When Colquitt failed to comply with drug court requirements, the trial court terminated him from the program. At the bench trial based on the stipulated police report, Colquitt neither asserted nor argued (1) that the State had failed to meet its burden of proof that the substance he had possessed was cocaine or (2) that the substance he had possessed was not cocaine. Nor did Colquitt (1) challenge either the accuracy of the officer's positive field test of the cocaine or the lack of a foundation for the admissibility of the field test or (2) object to the lack of a state laboratory test of the cocaine. On the contrary, Colquitt's trial counsel specifically told the court that he had reviewed the file and that he did not spot any merito-

---

[8] According to the prosecutor at oral argument on appeal, it is a common Pierce County practice that, when a defendant is accepted into the drug court program and signs the agreement for a stipulated trial if terminated from the program, typically the State does not request a laboratory test of the controlled substance or present a laboratory report.

rious legal issues. Moreover, at the drug-court-termination hearing, Colquitt challenged only the accuracy of his "dirty" urinalysis in another case; he did not challenge the quality or quantum of State evidence showing that he had possessed cocaine in this case.

¶34 Based on uncontroverted evidence that the controlled substance Colquitt had possessed was cocaine, the trial court found Colquitt guilty of unlawful possession of a controlled substance—cocaine.

¶35 The majority asserts that the field test was not proof beyond a reasonable doubt that the substance Colquitt possessed was cocaine, implying both that (1) the uncontroverted, positive field test was insufficient to identify the substance and that (2) an additional laboratory test was necessary for verification. I respectfully disagree. Even though Colquitt neither admitted his guilt nor expressly stipulated that the police report contained facts sufficient to establish his guilt, the law does not require such additional evidence under these circumstances.

## II. SUFFICIENT, UNCONTROVERTED PROOF OF COCAINE

¶36 Contrary to the majority's assertion, "the introduction of expert chemical analysis is not essential to convict" for possession of a controlled substance. *State v. Eddie A.*, 40 Wn. App. 717, 720, 700 P.2d 751 (1985). On the contrary, lay testimony and circumstantial evidence may be sufficient to establish the identity of a controlled substance. *Id.* Lay testimony may be presented by people who are familiar with the substance through prior use, trading, or law enforcement. *State v. Hernandez*, 85 Wn. App. 672, 676, 935 P.2d 623 (1997) (citing *United States v. Dominguez*, 992 F.2d 678, 681 (7th Cir. 1993)). Circumstantial evidence may include the physical characteristics of the substance as well as the packaging.[9] *See Hernandez*, 85 Wn. App. at 678-79.

---

[9] Here, unlike the cases that Colquitt and the majority cite, there was neither inconclusive lay testimony nor a conflicting test result, which, if viewed alone, might have been insufficient to prove the identity of the cocaine beyond a reasonable doubt. *See State v. Hundley*, 126 Wn.2d 418, 420-21, 895 P.2d 403

¶37 Here, the officer examined the substance in Colquitt's pocket, noting that it was small, white, rock-like, and appeared to be rock cocaine. Thus, the record contains the physical characteristics of the substance, which appeared to the officer to be cocaine. *See Hernandez*, 85 Wn. App. at 677. In addition, the record shows that the officer confirmed the substance's cocaine-like appearance through a field test of the white rocks, which field-tested positive for cocaine. And this evidence was uncontroverted.

¶38 The majority cites *Dominguez*, noting:

[T]he court stated that "as long as the available circumstantial evidence establishes its identity [as a controlled substance] beyond a reasonable doubt[,] [c]ircumstantial evidence establishing identification may include . . . lay-experience based on familiarity through prior use, trading, or law enforcement." [*Dominguez*, 992 F.2d at 681.] The *Dominguez* court, however, emphasized that when the record lacked indicia as to what factors a Drug Enforcement Administration agent considered in determining the identification of a substance, the prosecution failed to establish the identity of that substance. *Dominguez*, 992 F.2d at 681-82.

Majority at 797 (some alterations in original).

¶39 The evidentiary deficiencies decried in *Dominguez,* however, differ significantly from Colquitt's claimed evidentiary deficiencies here. First, unlike here, there was no controlled substance recovered or offered in evidence in *Dominguez*. Second, the foundation for the officer's recognizing the controlled substance was much more important in *Dominguez* because the testimony was hearsay and it related to highly speculative and circumstantial evidence, such as the intended price of the substance. In contrast, here, the officer testified about only the physical characteristics of the controlled substance that he observed and recognized as indicative of cocaine. As the federal circuit court noted in *Dominguez*:

(1995) (conflicting test results). *See also State v. Potts*, 93 Wn. App. 82, 87, 969 P.2d 494 (1998) (citing *Hernandez*, 85 Wn. App. at 675-76) (officer testified that powder "appeared" to be methamphetamine).

In the instant case, *the record is unclear as to what Agent Melick considered which eventually convinced him that the delivered substance was cocaine.* Review of the telephone conversations held between Melick and Jackie Dominguez or Galvan fail to reveal a factual basis to support Agent Melick's belief. Additionally, there is no evidence that Agent Turnbull, who accepted the delivery in Guatemala, was experienced in identifying cocaine. In fact Agent Melick became concerned precisely because Agent Turnbull was uncertain whether the substance she received was authentic. The other circumstantial evidence relied on by the government (an agreed upon price of $12,000, consistent with the price for one kilogram of cocaine in Guatemala and the covert manner in which the transaction was conducted, with delivery in Guatemala and payment in Milwaukee) could as easily support the existence of a sham drug sale as an authentic drug sale. More importantly, those arrangements were made by the undercover agent, and thus are not necessarily indicative of the conspirators' intent.

*Dominguez*, 992 F.2d at 681 (emphasis added).

¶40 Similarly, *State v. Roche*, 114 Wn. App. 424, 59 P.3d 682 (2002), on which the majority extensively relies, does not mandate reversal here. Division One of this court reversed Roche's conviction for possession of a controlled substance after it was discovered that the state crime lab chemist, who had tested the charged substance, had tampered with it to hide his own heroin addiction. *Roche*, 114 Wn. App. at 447. That the state crime lab chemist had tampered with the evidence cast suspicion over the accuracy of the State's laboratory test admitted against Roche, "tainted the integrity" of the trial, and created doubt about the chain of custody of the evidence and whether it had been altered. *Roche*, 114 Wn. App. at 428.

¶41 *Roche* is distinguishable for several reasons. First, the *Roche* court reversed and ordered a new trial based on extreme circumstances—to hide his heroin addiction, the State's expert laboratory chemist tampered with evidence, producing a potentially false test of the controlled substance and resulting in a tainted trial. Here, in contrast, there was no issue of evidence tampering.

¶42 Second, the *Roche* court did not hold that the evidence must include a confession and positive field test to be sufficient. Rather, the *Roche* court (1) referenced the following Snohomish County prosecutor's internal office policy for possession cases involving the tainted state laboratory tests by this chemist: " 'Cases in which we do not have *both* a good confession to the identity of the substance *and* a positive field test shall be dismissed' "[10] and (2) noted that, consistent with this internal policy, the Snohomish County prosecutor would not have tried Roche for possession because he did not confess and, therefore, the outcome would have been different without the evidence-tampering State chemist's testimony. The *Roche* court neither held nor suggested that the Snohomish County Prosecutor's internal office policy of requiring a confession is the standard that courts apply when determining sufficiency of the evidence.

¶43 Third, the *Roche* court considered whether the trial court should have granted a new trial based on newly discovered evidence, namely, the state laboratory chemist's malfeasance. In contrast, here, there is no issue of whether the trial court should have granted a new trial based on newly discovered evidence, tainted or otherwise. Rather, the issue on appeal here is sufficiency of the evidence. Our review on appeal of the sufficiency of the evidence and our review of a denial of a new trial based on newly discovered evidence are *not* comparable.

¶44 When reviewing a trial court's grant or denial of a new trial, the issue is whether newly discovered evidence might change the outcome of the case if there is a new trial; in this circumstance, we do not necessarily focus on whether the remaining evidence is sufficient to support the verdict, except as it relates to the pivotal issue of whether the new evidence is likely to change the trial's outcome.

¶45 In contrast, as both the majority and I note in setting forth the standard of review, we review a challenge to the sufficiency of the evidence as follows: (1) We view the

---

[10] *Roche*, 114 Wn. App. at 439 (quoting State's Resp. App. A).

evidence in the light most favorable to the State to determine whether a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt, *Hernandez*, 85 Wn. App. at 675; (2) in challenging the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all inferences that can reasonably be drawn from them, *id.*; (3) circumstantial evidence is just as reliable as direct evidence; (4) we defer to the trier of fact on issues involving conflicting testimony, credibility, and persuasiveness of the evidence, *id.*; and (5) *we* need not be convinced of the defendant's guilt beyond a reasonable doubt; rather, we must determine only whether substantial evidence supports the trial court's verdict, *State v. Potts*, 93 Wn. App. 82, 86, 969 P.2d 494 (1998). In my view, application of this standard of review here mandates that we affirm.

## III. Conclusion

¶46 The majority's acceptance of Colquitt's insufficient evidence argument, in essence, allows Colquitt to mount an untimely challenge to his newly-claimed-on-appeal lack of a foundation for the officer's field observation and test of the cocaine, i.e., the officer's training and experience in recognizing rock cocaine, the manner in which he conducted the field test, and the general reliability of the field test. Moreover, the majority allows such untimely challenge despite Colquitt's stipulation to the facts in the police report and despite Colquitt's timely challenge below to *other* evidence that he recognized as improper or insufficient.[11]

---

[11] Speaking on his own behalf, not through his lawyer, Colquitt challenged the sufficiency and accuracy of his "dirty" urinalysis, a separate King County drug charge, and a pretextual stop. Yet at trial, he never challenged the sufficiency or foundation of the evidence that he possessed cocaine, and he never complained about the absence of a lab report. Furthermore, Colquitt's trial counsel specifically told the court that he had reviewed the file and did not spot any meritorious legal issues.

In this manner, Colquitt waived any challenge he may have had to the sufficiency of the foundation or to the weight of the evidence on which the trial court relied in finding him guilty.

¶47 It was for the trial court to exercise its discretion in admitting and considering the evidence in the stipulated police report. Colquitt alleged neither at trial nor on appeal that the trial court abused this discretion. Rather, Colquitt's challenge is to the weight and sufficiency of the cocaine evidence in the record, which challenge he mounts for the first time on appeal. It was for the trial court, not us, to weigh the sufficiency of the uncontroverted evidence.[12] Here, the trial court performed its job—it clearly weighed the uncontroverted evidence and found it sufficient proof beyond a reasonable doubt that Colquitt possessed cocaine.[13]

¶48 Again, on appeal, we do not reweigh the evidence or substitute our view for that of the trial court to determine whether the evidence similarly persuades us beyond a reasonable doubt. Rather, as the majority correctly notes, the law limits us to viewing the evidence in the light most favorable to the State to determine only whether *"any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt."*[14] *Eddie A.*, 40 Wn. App. at 720 (emphasis added). I agree with the majority that we do not and should not "eliminate the need for laboratory tests, laboratory reports, or forensic chemists." Majority at 802. But I disagree with the majority's

---

[12] If Colquitt believed the evidence in the police report was deficient in foundation or weight, he could have elected to forgo signing the drug treatment program agreement, including his stipulation to the admission of this evidence in the police report in an abbreviated trial to the court. Colquitt did not elect this option. Instead, he waived his right to a full jury trial with live witnesses, including his right to seek a more detailed foundation for the admissibility of the field-tested cocaine evidence. Having waived those rights, he cannot now resurrect them on appeal.

[13] This situation is not like that in *Hutton*, cited by the majority, where the court held that existence of a fact cannot rest upon guess, speculation, or conjecture. *State v. Hutton*, 7 Wn. App. 726, 728, 502 P.2d 1037 (1972) (citing *State v. Carter*, 5 Wn. App. 802, 490 P.2d 1346 (1971)).

[14] The majority cites *Hundley*, in which the field test and all but one of the laboratory tests *failed* to detect the presence of marijuana, heroin, and cocaine. *Hundley*, 126 Wn.2d at 420-21. In contrast, here, there was a positive field test, which confirmed the officer's independent observations. Furthermore, here, there was no conflicting evidence that the substance was anything other than cocaine.

assertion that adoption of my dissent would bring about this result in other cases.[15]

¶49 The distinction here is that Colquitt waived his opportunity to contest the evidence. Thus, it was uncontroverted at trial that the substance was cocaine. Similarly, although "[t]he record is devoid of evidence of the officer's experience and training that would allow [the officer] to properly identify the items as cocaine," majority at 801, that lack should not be dispositive; Colquitt expressly waived the opportunity to have the State establish such a foundation and the opportunity for him to challenge the lack of foundation. In my view, under the applicable standards of review, this uncontroverted evidence is sufficient to support the trial court's verdict.

¶50 Accordingly, I would hold that the evidence was sufficient to support the trial court's finding beyond a reasonable doubt that the substance Colquitt possessed was cocaine. I would affirm.

---

[15] The majority asserts that

if an officer's opinion and field test, without more, is sufficient in this case to prove the identity of a controlled substance beyond a reasonable doubt, then an officer's opinion and field test, without more, certainly will be sufficient in other trials. Such an evidentiary standard would eliminate the need for laboratory tests, laboratory reports, or forensic chemists.

Majority at 802.