**FILED**
**MARCH 12, 2026**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40735-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| VICTOR JAMES MATHIS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — A jury convicted Victor Mathis of second degree assault, witness tampering, and violating a no-contact order. On appeal, Mathis argues the State presented insufficient evidence to sustain both the tampering and the assault convictions, and the trial court erred in allowing improper opinion testimony. In affirming, we conclude that sufficient evidence supports both challenged convictions and that Mathis failed to preserve his evidentiary challenge.

FACTS

*Background*

In June 2024, Sergeant Joseph Riggers was dispatched to Klickitat Valley Hospital because Cheryl M. reported she was assaulted by Victor Mathis, her boyfriend of 13

years.  Dispatch indicated that Mathis was waiting in the hospital parking lot.  Once there, Sergeant Riggers approached and spoke with Mathis.  Mathis claimed he had an argument with M. and she had fallen and hurt her arm.

Sergeant Riggers went inside the hospital and spoke with M., who had a fractured arm.  After the conversation, Sergeant Riggers provided paperwork to M. and asked her to submit her statement in writing.  Sergeant Riggers then went outside and placed Mathis under arrest.  The State charged Mathis with second degree assault.  Soon after the State filed the charge, the court issued an order prohibiting Mathis from contacting M.

Later, Sergeant Riggers went to M.'s house to ask about the paperwork he had given her.  The same day, Mathis called M. from jail.  Per protocol, the jail call was recorded.  A jail records clerk listened to the recording and notified Sergeant Riggers of the call.  Sergeant Riggers listened to the call and reported its content to the prosecutor's office.  Because of the call, which we describe later, the State amended the information by adding two charges—witness tampering and violation of a no-contact order.

*Trial*

Tabitha Scott, the mother of M.'s grandchildren, testified she happened to call M. the night she was taken to the hospital.  When M. answered, she was crying hysterically and Ms. Scott heard yelling.  During the conversation, M. kept repeating, "'I can't talk

right now.  My arm and head hurt really bad.  I've got to go to the hospital.  I've got to go to the hospital.'"  Rep. of Proc. (RP) at 228.  During the call, Ms. Scott could hear Mathis in the background saying, "no, he wasn't taking her, that she should have kept her mouth shut," and she heard him calling M. foul names.  RP at 229.  Mathis eventually agreed to take M. to the hospital.

M. testified about what happened.  A friend had visited Mathis and M. and needed a ride home.  Because Mathis had been drinking, M. gave the friend a ride home.  When M. returned, Mathis was waiting on their porch and accused her of cheating with the friend.

M. walked toward the front door, and somehow—either she fell or Mathis pushed her—she ended up down on the porch.  Mathis, who was wearing boots, began kicking her.  M. tried to block the kicks with her hands and arms.  At some point, Mathis stopped kicking and told M. to get into the house.  M. had difficulty getting up because her left arm was badly hurt.  When she went inside, Mathis pushed her into a recliner, knocked it over, and began kicking her again while she was on the floor.  While Mathis kicked her, he called her a slut and other such names.

When the State asked M. what caused her arm fracture, she testified it was Mathis' kicks, not the fall onto the porch.  Dr. Jeffrey Tanita, who later testified, confirmed that

M.'s fracture was consistent with getting kicked but stated it also could have been caused by a fall.

The State also asked M. what Mathis told her about completing the paperwork given to her by Sergeant Riggers. M. testified that Mathis told her she "didn't have to fill it out." RP at 243. She also testified that Mathis' comments did not influence what she disclosed in her written statement.

The State called Sergeant Riggers and the court admitted the recording of Mathis' jail call. The court then said to the jury, "As you can tell, we're going through a little bit of remodel, so hopefully if anybody has any difficulty hearing this, let us know. Okay?" RP at 271. After Sergeant Riggers identified the voices on the recording as those of M. and Mathis, the court played the recording for the jury.

The State then asked Sergeant Riggers about the recording:

> [STATE]: And I understand that the recording is a little bit difficult to hear.
> Q. Were you able to make out what was said?
> A. I was.
> Q. And what was that?
> A. That there's—
> [DEFENSE COUNSEL]: Objection, Your Honor. The exhibit should speak for itself, not necessarily Sergeant Riggers recounting it.
> THE COURT: Overruled. You can cross-examine it, [defense counsel].

4

A.  That there—summary of there—there's a problem and that the officer stopped by looking to get a statement from the incident.

. . . .

[Then the State replayed a portion of the recording for the jury.]

Q.  And what—what does Mr. Mathis say right there?

A.  Don't—

[DEFENSE COUNSEL]:  And renew my objection, Your Honor.

THE COURT:  Overruled.

A.  She'd asked about the fact that the officer was getting a statement or looking for the statement, didn't know what to do, and he says, "Don't."

[Then the State played a portion of the recording for the jury.]

Q.  What did Mr. Mathis say there?

A.  Then he'll be home if she doesn't fill out the statement.

RP at 272-73.

During closing arguments, defense counsel spoke about the jail call, noting that M. said, "'I have a problem.  They're looking for a statement.  What should I do?'  He says one word, 'Don't.'"  RP at 316-17.  Defense counsel argued that Mathis was not trying to induce M. to withhold information but instead was answering M.'s question.

The jury convicted Mathis on all three charges.  Mathis appeals to this court.

ANALYSIS

SUFFICIENT EVIDENCE SUPPORTS MATHIS' WITNESS TAMPERING CONVICTION

Mathis argues the State presented insufficient evidence to sustain a conviction of witness tampering.  We disagree.

In a criminal case, the State must provide sufficient evidence to prove each element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). A defendant may raise a challenge to the sufficiency of the evidence for the first time on appeal. *State v. Colquitt*, 133 Wn. App. 789, 795-96, 137 P.3d 892 (2006).

Where a defendant challenges their conviction based on insufficient evidence, the conviction will be upheld "if any rational fact finder could have found the essential elements beyond a reasonable doubt." *State v. Roberts*, 5 Wn.3d 222, 237, 572 P.3d 1191 (2025). "In claiming insufficient evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *Id*. "Inferences are drawn in the State's favor." *Id*. "We defer to the trier of fact for purposes of resolving conflicting testimony and persuasiveness of the evidence." *Id*. "Circumstantial evidence and direct evidence are equally reliable when determining the sufficiency of the evidence." *Id*. If we find insufficient evidence to prove an element, reversal is required and retrial is "'unequivocally prohibited.'" *State v. Hickman*, 135 Wn.2d 97, 103, 954 P.2d 900 (1998) (quoting *State v. Hardesty*, 129 Wn.2d 303, 309, 915 P.2d 1080 (1996)).

A person commits witness tampering where he or she "attempts to induce a witness" to withhold information from law enforcement relevant to a criminal

6

investigation. RCW 9A.72.120(1)(c). "Induce" means to influence or persuade.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1154 (1993).

Mathis first argues it was not possible for him to attempt to induce M. to willfully withhold information during their telephone call because she had already given that information to Sergeant Riggers at the hospital and a written statement from her would have been an unnecessary repetition. We reject this argument. There is no requirement in the statute or decisional authorities that the information the accused attempts to have a witness withhold must be unknown to law enforcement. In addition, a written statement made after calm reflection may well include more detail than an oral statement given soon after a crime, especially an oral statement given at a hospital soon after suffering a fractured arm.

Mathis next argues there is no evidence that M.'s story changed between her two statements and, therefore, she was not induced to withhold information. We also reject this argument. There is no requirement that a witness actually withhold information. The statute itself plainly requires only evidence that the accused *attempts* to induce a witness to withhold information.

Mathis further argues that telling M. she did not have to complete the statement is not behavior courts have recognized as attempting to tamper with witness testimony. He

cites several cases for this proposition. However, the testimony established that M. asked what she should do about the written statement, and Mathis said, "'Don't.'" RP at 273. And when M. asked what would happen if she did not complete the statement, Mathis said, "Then [I'll] be home." RP at 273. Mathis did not merely tell M. she did not need to make a written statement—he told her not to so he could come home.

Viewing the evidence and all reasonable inferences in favor of the State, a reasonable trier of fact could have found beyond a reasonable doubt that Mathis tried to induce M. to not provide law enforcement with her written statement. We reject Mathis' evidentiary sufficiency challenge.

MATHIS DID NOT PRESERVE HIS CLAIM OF ER 701 EVIDENTIARY ERROR

Mathis, citing ER 701, argues the trial court erred by admitting Sergeant Riggers' lay witness opinion of the recorded jail call. The State argues that Mathis failed to preserve an ER 701 claim of error because defense counsel's objection at trial was "[t]he exhibit should speak for itself." RP at 272. We agree.

In its brief, the State describes defense counsel's "[t]he exhibit should speak for itself" objection as one under ER 403, i.e., that the unfair prejudice of the sergeant's testimony substantially outweighed its relevance. In reply, Mathis maintains that defense counsel's objection was one under ER 701. We disagree with both parties; we believe

that defense counsel's "[t]he exhibit should speak for itself" objection as one under

ER 1004, i.e., admission of evidence other than the original. Regardless, Mathis did not

preserve an ER 701 claim of error.

We generally decline to review claims of error first raised on appeal. RAP 2.5(a).

We see no reason to depart from this general rule, especially here, where defense counsel

in closing tacitly agreed that the sergeant's testimony of what Mathis said in the jail call

recording was correct.

SUFFICIENT EVIDENCE SUPPORTS MATHIS' ASSAULT CONVICTION

Mathis argues the State presented insufficient evidence to sustain a conviction of

second degree assault because its evidence rested on innuendo, speculation, and

conjecture. We disagree.

One way a person commits second degree assault is if they intentionally assault

another and cause substantial bodily harm. RCW 9A.36.021(1)(a). A fracture of a body

part is considered substantial bodily harm. RCW 9A.04.110(4)(b).

As noted above, we consider the evidence and all reasonable inferences in the

State's favor. Mathis contends any conclusion by the jury that Mathis caused M.'s

fracture would be based entirely on innuendo, speculation, and conjecture. Mathis

cites *State v. Carter*, 5 Wn. App. 802, 807, 490 P.2d 1346 (1971), and *State v. Yoakum*,

37 Wn.2d 137, 144, 222 P.2d 181 (1950), arguing that the existence of fact cannot rest on speculation or conjecture nor can one be convicted by innuendo. While Mathis is correct, we distinguish *Carter* and *Yoakum* as convictions resting on speculative evidence rather than a conviction resting on reasonable inferences, such as the assault conviction here. As noted in *Carter*, there must at least be sufficient evidence for the jury to infer a disputed fact in the State's favor. 5 Wn. App. at 806.

Here, the jury heard evidence of two reasonable causes of M.'s arm fracture—falling on the porch or being repeatedly kicked by Mathis. M. testified she could not remember if she fell or was pushed, but somehow she ended up down on the porch. She testified that Mathis was wearing boots, he repeatedly kicked her, and she used her hands and arms to defend against the kicks. M. testified that her arm was fractured by being kicked by Mathis, not by falling or being pushed. Ms. Scott's testimony—describing Mathis' extreme anger toward M.—supports the notion that Mathis' attack was violent and strengthens M.'s testimony that her arm was fractured by being kicked repeatedly by Mathis.

Construing the evidence and all reasonable inferences in the State's favor, we conclude that a rational trier of fact could have found beyond a reasonable doubt that

Mathis' kicks were the cause of M.'s fractured arm. We reject Mathis' evidentiary sufficiency challenge.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____          _____
Staab, J.                                   Hill, J.

11