[No. 62679-5-I.   Division One.   October 25, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. JORGE FORTUN-CEBADA, *Appellant*.

---

*Christopher Gibson* (of *Nielsen, Broman & Koch PLLC*) and *Jordan B. McCabe*, for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Jennifer H.S. Atchison, Deputy*, for respondent.

¶1 SCHINDLER, J. — The State charged Jorge Fortun-Cebada with possession of cocaine with intent to deliver. Fortun-Cebada seeks reversal of his conviction of possession of cocaine, claiming his attorney provided ineffective assistance of counsel by failing to move to suppress on the grounds that the police unlawfully seized the alleged buyer, Wilbert Walker, and Walker's show-up identification of Fortun-Cebada was inherently unreliable. Fortun-Cebada also claims that because admission of out-of-court hearsay statements at the CrR 3.6 suppression hearing violated his constitutional right to confrontation under *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), his attorney's failure to object constitutes deficient performance. We conclude that because the police did not unlawfully detain Walker, and Walker's show-up identification of Fortun-Cebada did not create a substantial likelihood of irreparable misidentification, Fortun-Cebada cannot establish ineffective assistance of counsel. We also conclude that admission of out-of-court hearsay statements at the pretrial CrR 3.6 hearing did not violate *Crawford* and affirm.

## FACTS[1]

¶2 On January 2, 2008, Seattle Police Officers Juan Tovar, Frank Poblocki, and Jonard Legaspi were on bicycle patrol in a high narcotic area in the International District. The officers each had at least nine years of experience in street level drug transactions.

¶3 The Seattle Police Department had received a number of citizen complaints of drug dealing at a fast food restaurant located at 507 South Jackson Street. The police had also observed a marked increase in drug users at that location, and Officer Tovar had recently arrested several people near the minimart for using crack cocaine.

¶4 At around 11:45 a.m., the officers stopped at a red light near the restaurant at the corner of 5th Avenue South and South Jackson Street. As Officer Tovar, Officer Poblocki, and Officer Legaspi waited for the light to change, approximately eight people came out of the restaurant and walked westbound. Officer Tovar immediately recognized the person in the middle of the group as Jorge Fortun-Cebada, a known drug dealer. Fortun-Cebada was wearing a blue rain jacket. Officer Tovar recognized the other individuals in the group as crack cocaine users.

¶5 When Fortun-Cebada separated from the group, a man, later identified as Wilbert Walker, immediately approached him. After Walker talked to Fortun-Cebada, they turned around and started walking together eastbound. Fortun-Cebada reached into his left pants pocket, pulled out his left hand, and cupped it next to his waist. Walker then looked into Fortun-Cebada's cupped hand. The officers watched as Fortun-Cebada and Walker made a hand-to-hand exchange, hugged, and then separated. The officers were not able to see what was exchanged. As Fortun-Cebada walked away he put his closed left hand in his left

---

[1] Fortun-Cebada does not challenge the trial court's CrR 3.6 findings of fact on the defense "Motion to Suppress Physical, Oral or Identification Evidence." Unchallenged findings of fact are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

pants pocket and then pulled his open hand out of his pocket. The officers watched as Walker walked away and put his left hand into the front pocket of his sweatshirt.

¶6 Officer Tovar rode his bike across the street to talk to Fortun-Cebada. Meanwhile, Officer Poblocki and Officer Legaspi rode in different directions around the block to find Walker.

¶7 After a brief conversation with Fortun-Cebada, Officer Tovar asked, "Do you mind if I check your left pant pocket?" Fortun-Cebada responded, "No, you can't check me and if you don't have a reason to stop me then you can't touch me. I'm leaving." Officer Tovar told Fortun-Cebada, "You're free to go." Fortun-Cebada then walked away toward the intersection.

¶8 Officer Poblocki and Officer Legaspi located Walker a couple of blocks away at the corner of 6th Avenue South and South King Street. Walker had both hands in the front pocket of his sweatshirt. Officer Poblocki asked him "if [he] could talk to him for a minute, and [Walker] said yeah, and he stopped walking." Officer Poblocki told Walker to take his hands out of his sweatshirt pocket. Officer Legaspi was located off to the side. As Walker removed his left hand, Officer Legaspi saw a cream-colored rock in his pocket that looked like rock cocaine. The officers placed Walker in custody.

¶9 Walker waived his *Miranda*[2] rights, identified himself as Wilbert Walker, and admitted that the cream-colored rock was cocaine. Walker told Officer Poblocki that he bought the crack cocaine for $20 "from some guy that he did not know on the sidewalk." Officer Poblocki asked Walker if he would recognize the seller if he saw him again. Walker said that he would.

¶10 Officer Poblocki notified Officer Tovar that Walker was in custody and could identify the man who sold him the cocaine. Officer Tovar then approached Fortun-Cebada, told

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

him that he was no longer free to leave, and read Fortun-Cebada his *Miranda* rights.

¶11 Shortly thereafter, Walker identified Fortun-Cebada as the person who sold him the crack cocaine. In response to Officer Poblocki's question "do you recognize this guy from anywhere . . . ," Walker said, "[Y]eah, that is the guy that who I gave 20 bucks to and he gave me . . . crack cocaine."

¶12 The officers placed Fortun-Cebada under arrest. In a search incident to arrest, the police seized from his left pant pocket a rolled up $20 bill, a rolled up $5 bill, and a piece of tissue that contained three pieces of crack cocaine.

¶13 Later, at the precinct, Walker signed a written statement that states, in pertinent part:

> I drove down to Chinatown by 5th and Jackson because I wanted to buy $20 worth of crack cocaine. About a year ago I went down there with a friend because she wanted to buy some crack. I saw a black guy going in and out of a little restaurant there and I asked him if he knew where to get "something" at. By "something," I meant crack cocaine. He pointed at a guy on the sidewalk and I walked over to that guy. I told him, "can I get a twenty?" He said, "come on," and we walked together for about 5 steps. I gave him $20 and he gave me a piece of what I thought was crack. He then gave me a hug like he knew me and he went his way and I went mine.

Walker also stated that "[t]he police asked me to look at a guy to see if he was the guy that sold me the crack. They drove me to 5th and Jackson and I saw they had the guy handcuffed that sold me the crack. He was wearing a blue jacket."

¶14 The State charged Fortun-Cebada with one count of possession with intent to deliver cocaine in violation of RCW 69.50.401(1) and (2)(a).

¶15 The defense filed a CrR 3.6 motion to suppress the cocaine seized from Fortun-Cebada, arguing the police did not have probable cause to arrest because Walker was not a reliable informant and the information he provided the police did not justify the detention of Fortun-Cebada.

¶16 Officers Tovar, Poblocki, and Legaspi were the only witnesses to testify at the CrR 3.6 hearing. Officer Poblocki testified about contacting Walker and Walker's identification of Fortun-Cebada as the man who sold him the cocaine. During the cross-examination of Officer Poblocki, the defense introduced Walker's written statement into evidence.

¶17 During oral argument on the motion to suppress, defense counsel argued that the contact with Walker was an unlawful *Terry*[3] stop. But when the court questioned whether Fortun-Cebada had standing to challenge the police contact with Walker, defense counsel conceded that Fortun-Cebada did not have standing. Following the hearing, the defense filed a supplemental memorandum arguing that Officer Tovar was not justified in stopping Fortun-Cebada because Walker was not a reliable informant.

¶18 The court denied Fortun-Cebada's motion to suppress the cocaine. The court concluded that the initial police contact with Fortun-Cebada was a permissible social contact, and that the officers' observations of the exchange with Walker and, shortly thereafter, finding the suspected rock cocaine on Walker provided reasonable suspicion to detain Fortun-Cebada. The court concluded there was probable cause to arrest Fortun-Cebada and also rejected the defense argument that Walker was an unreliable informant.

> Probable cause to arrest exists where the totality of the facts and circumstances known to the officers at the time of arrest would warrant a reasonably cautious person to believe an offense is being committed. The officers' observations coupled with their experience with narcotics investigations and Walker's identification of the Defendant as the person who just sold him crack cocaine provided the officers with probable cause to place the Defendant under arrest.

> Walker satisfies the two prong test under *Sieler*.[4] Walker satisfies the reliability prong because he was not anonymous, was being detained by police at the time of the tip, and given

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[4] *State v. Sieler*, 95 Wn.2d 43, 47, 621 P.2d 1272 (1980).

his situation, was unlikely to make the situation worse by giving false information to the officers. Moreover, Walker's tip was corroborated by the officers' observations of the hand-to-hand transaction with the Defendant immediately before they contacted him, the officers' prior information that the Defendant was a drug dealer, and the crack cocaine found in Walker's pocket.

¶19 Before trial, the defense moved to exclude any testimony as to Walker's out-of-court hearsay statements. The State agreed that any statement identifying Fortun-Cebada as the seller was inadmissible hearsay.

> None of Mr. Walker's statements regarding the drug transaction are identifying the defendant as the seller. I would be offering the interaction with Officers Poblocki and Legaspi, of course, then when he teamed up with them, they then found crack cocaine on his person in that pocket.

> But as far as any statements of identification of the defendant as the seller, I wouldn't be offering any of those. I don't have them and they would be hearsay.

¶20 Officers Tovar, Poblocki, and Legaspi testified at trial. Walker did not testify. At the conclusion of the State's case, the defense moved to dismiss the charge of possession of cocaine with intent to deliver. The court granted the motion to dismiss. The court ruled the evidence was insufficient to prove beyond a reasonable doubt that Fortun-Cebada had the intent to deliver the crack cocaine to Walker. The court granted the State's motion to amend the information to charge Fortun-Cebada with one count of possession of cocaine in violation of RCW 69.50.4013.

¶21 Fortun-Cebada testified and denied possessing any cocaine. Fortun-Cebada said that he did not talk to or shake hands with anyone that day and the police arrested the wrong person. Fortun-Cebada told the jury that the police put the cocaine in his pocket as part of a cover-up.

¶22 The jury convicted Fortun-Cebada of possession of cocaine. The court imposed a standard range sentence.

## ANALYSIS

¶23 Fortun-Cebada claims his attorney provided ineffective assistance of counsel by failing to move to suppress the cocaine on the grounds that the police unlawfully seized Walker and Walker's show-up identification of Fortun-Cebada was inherently unreliable. Fortun-Cebada also argues his attorney should have objected to the admission of Walker's out-of-court hearsay statements at the pretrial CrR 3.6 hearing. Fortun-Cebada contends admission of the out-of-court hearsay statements at the motion to suppress hearing violated his right to confrontation under *Crawford*.

¶24 The purpose of the effective assistance of counsel guaranty of the Sixth Amendment is to ensure that a criminal defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish ineffective assistance of counsel, Fortun-Cebada must show both deficient performance—that his attorney's representation fell below the standard of reasonableness—and resulting prejudice. *Id.* at 687; *State v. Bowerman*, 115 Wn.2d 794, 808, 802 P.2d 116 (1990) (adopting the standards in *Strickland*). If a defendant fails to establish either prong, we need inquire no further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

¶25 To establish deficient performance, Fortun-Cebada has the heavy burden of showing that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. There is a strong presumption of effective representation of counsel, and the defendant has the burden to show there are no legitimate strategic or tactical reasons for the challenged conduct. *State v. McFarland*, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995).

¶26 Fortun-Cebada also needs to show that his attorney's deficient performance resulted in prejudice such that

"there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." *Hendrickson*, 129 Wn.2d at 78. Here, in order to establish prejudice, Fortun-Cebada must show that if his lawyer argued that the detention of Walker was improper and the show-up identification was unreliable, there is a reasonable probability that the motion to suppress the cocaine the police seized from Fortun-Cebada on those grounds would have been granted. *McFarland*, 127 Wn.2d at 337.

*Police Contact with Walker*

¶27 Fortun-Cebada contends his attorney provided ineffective assistance of counsel by failing to challenge the legality of Walker's detention. Fortun-Cebada asserts that the contact with Walker was an unlawful *Terry* stop, and the evidence seized is inadmissible under the derivative exclusionary rule.[5] The State argues that Fortun-Cebada does not have standing to challenge the legality of the police contact with Walker. The State also argues that in any event, the contact was not an unlawful detention but rather a permissible social contact. Assuming, without deciding, that Fortun-Cebada has standing to challenge the police contact with Walker, the undisputed record supports the conclusion that the police contact with Walker was a lawful social contact.

¶28 The Fourth Amendment and article I, section 7 of the Washington State Constitution prohibit unreasonable search and seizure. *State v. Day*, 161 Wn.2d 889, 893, 168 P.3d 1265 (2007). Fortun-Cebada argues that a seizure occurred when the police told Walker to take his hands out of his sweatshirt pocket.

¶29 We review de novo whether the facts amount to a seizure. *State v. Rankin*, 151 Wn.2d 689, 709, 92 P.3d 202 (2004). A seizure occurs where a reasonable person would have believed that he was not free to leave or free to

---

[5] Fortun-Cebada concedes in his brief that the automatic standing rule does not apply.

otherwise decline an officer's request. *O'Neill*, 148 Wn.2d at 574; *State v. Armenta*, 134 Wn.2d 1, 10-11, 948 P.2d 1280 (1997).

¶30 In *State v. Nettles*, 70 Wn. App. 706, 711-12, 855 P.2d 699 (1993), this court found that given the permissive nature of the officer's request to speak with the defendant Nettles, a seizure did not occur. In *Nettles*, after Nettles and two other men saw the police officer in her patrol car, they started quickly walking away. The officer pulled over, got out of the patrol car, and called out to Nettles and the two other men, " 'Gentleman, I'd like to speak with you, could you come to my car?' " *Id.* at 708. Nettles stopped and turned around. The two other men kept walking. The officer told Nettles to remove his hands from his pockets and come toward the patrol car. *Id.* As Nettles took his hands out of his pockets, he threw a plastic bag under the patrol car. The officer ordered Nettles to place his hands on the patrol car and seized the bag containing suspected cocaine. *Id.*

¶31 On appeal, we affirmed the trial court's denial of Nettle's motion to suppress. We held that a seizure does not occur "when a police officer merely asks an individual whether he or she will answer questions or when the officer makes some further request that falls short of immobilizing the individual." *Id.* at 710. We concluded that it was not unreasonable to direct Nettles to make his hands visible, and that telling him to do so did not convert the encounter into a seizure. *Id.* at 712. The court also cited to decisions in other out-of-state courts that reached the same conclusion. *Id.* at 710 n.6.

¶32 Here, as in *Nettles*, Officer Poblocki asked Walker if he could speak to him before telling him to take his hands out of his sweatshirt pocket. There is no dispute that Walker was under no obligation to talk to Officer Poblocki and could have walked away. As in *Nettles*, we conclude the direction to remove his hands from his sweatshirt pocket

did not convert a permissible social contact into a seizure.[6] Because Fortun-Cebada cannot show that a motion to suppress the evidence seized from Walker would have been granted, Fortun-Cebada cannot establish ineffective assistance of counsel.[7]

## Show-Up Identification

¶33 Fortun-Cebada also argues that his attorney provided ineffective assistance of counsel by not challenging Walker's show-up identification. Fortun-Cebada contends that because he was in handcuffs, the show-up created a substantial likelihood of irreparable misidentification.

¶34 By itself, the presence of a suspect in handcuffs is not enough to show the show-up procedure was unduly suggestive. *State v. Guzman-Cuellar*, 47 Wn. App. 326, 336, 734 P.2d 966 (1987). The court must review the totality of the circumstances to determine whether the suggestiveness created a substantial likelihood of irreparable misidentification. *State v. Maupin*, 63 Wn. App. 887, 897, 822 P.2d 355 (1992). To determine whether the identification was reliable, the court must consider the factors set out in *Manson v. Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977):

> "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation."

*Maupin*, 63 Wn. App. at 897 (quoting *Brathwaite*, 432 U.S. at 114).

---

[6] The case Fortun-Cebada relies on, *State v. Glover*, 116 Wn.2d 509, 806 P.2d 760 (1991), to argue that Walker was unlawfully subject to a seizure is inapposite. In *Glover*, the defendant claimed that the police did not have reasonable suspicion to conduct a *Terry* stop. *Id.* at 514.

[7] Fortun-Cebada also claims that his attorney provided ineffective assistance by not challenging Walker's reliability as an informant because Walker did not provide an adequate description of the seller. But the record shows that defense counsel made this same argument below. Accordingly, Fortun-Cebada cannot establish prejudice. *Hendrickson*, 129 Wn.2d at 78.

¶35 Here, an analysis of the *Brathwaite* factors shows there was not a substantial likelihood of irreparable misidentification. Walker had ample opportunity to observe Fortun-Cebada when they were together. The undisputed testimony of Officers Tovar, Poblocki, and Legaspi establishes Fortun-Cebada and Walker had a brief conversation, walked down the street together, made hand-to-hand contact, and hugged before separating. Walker identified Fortun-Cebada within minutes of the encounter, and the record does not suggest any uncertainty about the identification. Further, the time between Walker's encounter with Fortun-Cebada and his identification of Fortun-Cebada as the person who sold him cocaine was very short.

¶36 We conclude that because the show-up identification did not create a substantial likelihood of misidentification, Fortun-Cebada cannot establish ineffective assistance of counsel.

*Admission of Out-of-Court Hearsay at Suppression Hearing*

¶37 Fortun-Cebada asserts that his attorney provided ineffective assistance of counsel by failing to object to the admission of Walker's out-of-court hearsay statements at the CrR 3.6 pretrial suppression hearing.[8] Fortun-Cebada asserts that admission of the hearsay statements violated his right to confrontation as guaranteed by the Sixth Amendment to the United States Constitution.

---

[8] Like many other states, Washington has adopted a court rule giving the defendant the right to file a pretrial motion to suppress evidence. CrR 3.6 provides:

(a) **Pleadings.** Motions to suppress physical, oral or identification evidence, other than motion pursuant to rule 3.5, shall be in writing supported by an affidavit or document setting forth the facts the moving party anticipates will be elicited at a hearing, and a memorandum of authorities in support of the motion. Opposing counsel may be ordered to serve and file a memorandum of authorities in opposition to the motion. The court shall determine whether an evidentiary hearing is required based upon the moving papers. If the court determines that no evidentiary hearing is required, the court shall enter a written order setting forth its reasons.

(b) **Hearing.** If an evidentiary hearing is conducted, at its conclusion the court shall enter written findings of fact and conclusions of law.

¶38 Where a claim of ineffective assistance of counsel rests on trial counsel's failure to object, a defendant must show that an objection would likely have been sustained. *State v. Saunders*, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

¶39 The confrontation clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Fortun-Cebada relies on *Crawford* to argue that admission of Walker's out-of-court hearsay statements at the pretrial suppression hearing violated his constitutional right to confrontation.

¶40 In *Crawford*, the Supreme Court established a rule barring admission of testimonial hearsay at trial absent the witness's unavailability and a prior opportunity to cross-examine. *Crawford*, 541 U.S. at 53-54. Citing the infamous treason trial of Sir Walter Raleigh, the Court determined that the "principal evil" the confrontation clause was meant to address was the use of pretrial ex parte examinations that were used at trial without allowing the defendant the right to cross-examine the accuser. *Id.* at 50. "Our cases have thus remained faithful to the Framers' understanding: Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59.

¶41 But nothing in *Crawford* suggests that the Supreme Court intended to change its prior decisions allowing the admission of hearsay at pretrial proceedings, such as a suppression hearing. *See McCray v. Illinois*, 386 U.S. 300, 311-13, 87 S. Ct. 1056, 18 L. Ed. 2d 62 (1967) (no confrontation clause violation where defendant was denied the chance to discover an informant's name at pretrial hearing); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 52, 54 n.10, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987) (plurality opinion) (Noting that to accept a broader interpretation would transform the confrontation clause into a constitutionally compelled rule of discovery and further recognizing

the Court "normally has refused to find a Sixth Amendment violation when the asserted interference with cross-examination did not occur at trial."); *California v. Green*, 399 U.S. 149, 157, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970) ("it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause"); *Barber v. Page*, 390 U.S. 719, 725, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968) ("The right to confrontation is basically a trial right.").

¶42 The overwhelming majority of state courts that have addressed the question of whether *Crawford* applies to a preliminary hearing such as a motion to suppress have also held that the right of confrontation is not implicated. *See Lewis v. State*, 904 N.E.2d 290, 293-94 (Ind. Ct. App. 2009); *State v. Rivera*, 2008-NMSC-56, 144 N.M. 836, 192 P.3d 1213, 1215-17; *State v. Williams*, 404 N.J. Super. 147, 171, 960 A.2d 805 (2008); *State v. Watkins*, 40 Kan. App. 2d 1, 190 P.3d 266, 270-71 (2007); *Gresham v. Edwards*, 281 Ga. 881, 644 S.E.2d 122, 124 (2007); *State v. Rhinehart*, 2006 UT App 517, 153 P.3d 830, 834-35; *Sheriff v. Witzenburg*, 122 Nev. 1056, 145 P.3d 1002, 1005-06 (2006); *State v. Woinarowicz*, 2006 ND 179, 720 N.W.2d 635, 641; *People v. Brink*, 31 A.D.3d 1139, 818 N.Y.S.2d 374 (2006); *People v. Felder*, 129 P.3d 1072, 1073 (Colo. App. 2005); *Vanmeter v. State*, 165 S.W.3d 68, 71-75 (Tex. App. 2005).[9]

¶43 We hold there is no right to confrontation at a pretrial CrR 3.6 evidentiary hearing on a motion to suppress under the Sixth Amendment and *Crawford*. Accordingly, Fortun-Cebada's attorney did not provide ineffective assistance of counsel by failing to object to the admission of Walker's out-of-court hearsay statements at the CrR 3.6 suppression hearing.

¶44 We affirm.

Dwyer, C.J., and Appelwick, J., concur.

---

[9] But see *Curry v. State*, 228 S.W.3d 292, 298 (Tex. App. 2007), disagreeing with *Vanmeter*.