# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| STATE OF WASHINGTON, | No. 47286-4-II |
|---|---|
| Respondent, | |
| v. | |
| KEVIN ROBERT BOWEN, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Kevin Robert Bowen appeals his guilty plea, conviction, and sentence. Bowen pleaded guilty to possession of a controlled substance, and after a jury trial, was found guilty of possession of a stolen vehicle and possession of stolen property in the second degree. We conclude that the charging document was not deficient, that the trial court did not abuse its discretion by admitting the burglary evidence, and that the erroneous admission of theft of vehicles evidence was harmless. Further, we conclude that Bowen cannot establish prejudice for his ineffective assistance of counsel claim and that sufficient evidence supported Bowen's guilty plea. Finally, we conclude that the trial court erred by imposing legal financial obligations (LFOs) without conducting an individualized inquiry into Bowen's ability to pay discretionary LFO's. We affirm Bowen's convictions for possession of a stolen vehicle, unlawful possession of stolen property in the second degree, and unlawful possession of a controlled substance. However, we remand to the trial court to conduct an individualized inquiry into Bowen's ability to pay LFOs.

We affirm in part and remand.

FACTS

I.    FACTUAL BACKGROUND

In the very early hours of March 8, 2014, Deputy Daniel Twomey stopped a speeding Ford Explorer, driven by Bowen. Twomey requested Bowen's license and registration. Bowen handed him the documents but the name on the license did not match the name on the registration. The driver's license was Bowen's but the vehicle was registered to "Kevin Kinslow." 2 Report of Proceedings (RP) at 158. Twomey asked Bowen who the vehicle belonged to. Bowen answered that it belonged to his friend Kevin Kinslow, and that Kevin loaned him the vehicle so that he could move some items. Twomey noticed the back of the vehicle was loaded with property.

Twomey radioed dispatch the location of the traffic stop and the license plate number on the vehicle. Dispatch informed him that the vehicle was stolen. Twomey then asked Bowen to exit the vehicle, verified that the vehicle's vehicle identification number matched the stolen vehicle record, and placed Bowen under arrest. Twomey searched Bowen's person and found a "small, clear zipper baggie of a crystalline substance in [Bowen's] right front pants pocket. [The] substance field tested positive for the presence of methamphetamine." Clerk's Papers (CP) at 345.

Twomey contacted Everett Kinslow,[1] who had reported the vehicle stolen, and learned that Kevin Kinslow, Everett's son, lived in Pennsylvania. He confronted Bowen with this information and asked Bowen about his prior statement. Bowen stated again that Kevin was a friend and he planned to meet Kevin at Kevin's home in the morning to return the vehicle. Shortly thereafter, Twomey searched the vehicle and found 31 various keys to vehicles, padlocks, and houses; bolt cutters; a gray and red lawn mower; and a police radio scanner. Two sets of keys for the Ford

---

[1] Because Everett and Kevin Kinslow share the same last name, for ease of identity we refer to each by his first name. We intend no disrespect.

Explorer were also located, as well as a box containing drug paraphernalia including a "hype kit."[2] 2 RP at 233. A deputy also found among the items: empty milk crates, watches, jewelry, a camera, and two welding machines. The Kitsap County Sheriff's office later ascertained that many of these items had been reported stolen.

Three days before Bowen's arrest, Everett went to his son's house and found it "ransacked." 2 RP at 119. Items were missing. Everett checked on the house twice a week and had been watching it for the six years that Kevin was away in the Navy. Two of the three vehicles were missing from the garage. Only the Ford Explorer remained. Kevin did not give anyone permission to use the vehicles from his house.

On March 7, Everett returned to his son's house to further reinforce it and found it had been broken into again. He noted that the Ford Explorer and its keys were missing, along with a lawn mower. The next day, the sheriff's Office contacted Everett to let him know officers had recovered the Ford Explorer.

When he got the vehicle back, Everett noticed that where the vehicle had been relatively empty before, it was now full of items. Everett went through the contents of the Ford Explorer. He found his son's lawn mower and many other items he did not recognize. Everett called the sheriff's office and a deputy retrieved the items that Everett could not identify as his son's. That deputy went through the items to try to return them to their rightful owners. Among the items, she found paperwork with Bowen's name, including a service contract cancelation form from Truck Town, another Truck Town form that referenced a Jeep Cherokee, an automobile insurance form from Dairyland Auto for a Jeep Sport, and several other pages with "KB" written on them.

---

[2] The box included hypodermic needles, some dirty spoons, and other things the officer testified are commonly used by drug users.

II.     PROCEDURAL HISTORY

The State charged Bowen with possession of a controlled substance (methamphetamine), three counts of possession of a stolen vehicle, and possession of stolen property in the second degree. The court granted the State's motion to dismiss two of the three possession of a stolen vehicle counts. The language in the charging document for the remaining possession of a stolen vehicle count stated, "On or about March 8, 2014, in the County of Kitsap, State of Washington, the above-named Defendant did knowingly possess a stolen motor vehicle; contrary to Revised Code of Washington 9A.56.068." CP at 2. The possession of stolen property in the second degree count read,

> On or about March 8, 2014, in the County of Kitsap, State of Washington, the above-named Defendant did, knowingly receive, retain, possess, conceal, or dispose of stolen property, knowing that it had been stolen, and did withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto, said property being in excess of seven hundred fifty dollars ($750.00) in value; contrary to the Revised Code of Washington 9A.56.140(1) and RCW 9A.56.160(1)( a).

CP at 2. Bowen did not object to the charging document.

Bowen pleaded guilty to possession of a controlled substance. There was no plea agreement. The court engaged in a colloquy with Bowen on the record. The court asked if he understood the count, if he had gone over the paperwork with his attorney, if he understood it, if he had signed it, if he understood all the rights he was giving up, and if he knew the maximum sentence. Bowen answered affirmatively to all the court's queries and entered a guilty plea. The

court asked if it was an *Alford* plea[3] and defense counsel responded, "I guess he's not making a statement, so he would rather have you read the police reports."[4] 1 RP at 22.

The plea form stated, "The elements are: Set out in the Information." CP at 346. Bowen checked the box stating, "Instead of making a statement, I agree that the court may review the police reports and/or a statement of probable cause supplied by the prosecution to establish a factual basis for the plea." CP at 354. The court stated that it had read the report and that it was contained in the court file. The report said that the deputy found a "small, clear zipper baggie of a crystalline substance in [Bowen's] right front pants pocket. [The] substance field tested positive for the presence of methamphetamine." CP at 345. The trial court found the plea knowing and voluntary, and that Bowen had a full understanding of the proceeding. Further, "based upon the Probable Cause statement," the trial court found a factual basis to support the charge. 1 RP at 23.

Prior to the start of trial, defense counsel moved to exclude all ER 404(b) evidence. The State responded, "I don't anticipate providing 404(b) evidence. The only question when he was arrested is whether he had a warrant. That would be the only thing that I could see coming up." 1 RP at 32. The court then granted the motion.

Following the ruling, the State argued for the admission of evidence relating to the drugs found on Bowen's person when he was arrested. The court asked defense counsel whether there was a difference between the drugs on Bowen's person and the paraphernalia found in the vehicle. Defense counsel responded, "I think there is a difference. I think the contents of the vehicle are

---

[3] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). Washington has a similar type of plea. *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976).

[4] The police reports are not contained in the record. All that is before us is the paperwork for the guilty plea and the statement of probable cause. Bowen states that there is no police report in the court file. He states that because the probable cause statement was the only document in the court file, he assumes it is the only thing the court reviewed. The State does not respond to this assertion.

fair game, the condition of the vehicle as found by law enforcement. I think all of that can be relevant to his knowledge." 1 RP at 52. He further stated, "I don't think there's an argument that the jurors shouldn't hear what was found in the vehicle." 1 RP at 53.

The court ultimately ruled against admitting the evidence because the prejudicial effect outweighed its probative value. But it ruled, "[W]hatever is in the vehicle, whether it's the drug paraphernalia or anything else, is something that can be testified to. The condition of the vehicle when the officers found it is relevant to the case." 1 RP at 53-54.

Before the State called its first witness, Bowen moved to exclude evidence of the burglary and the theft of the other two vehicles that occurred prior to March 7. He argued that the evidence was not relevant to proving any element of the State's case. When asked to clarify his objection, he stated that he was objecting on relevance grounds.

The State argued, "[T]he Ford Explorer was present during the original burglary, and it was ransacked and gone through during this original burglary between February 26 and March 5. And the State does have to prove that in fact these vehicles were stolen, and this is part of the res gestae of the case." 2 RP at 94. The State argued again later, "I think it's very important that the vehicle was ransacked. The two other vehicles being stolen is just a part of what was happening on that day."[5] 2 RP at 97. The court admitted the testimony about the prior burglary "based upon the res gestae presentation of the State's case." 2 RP at 97. It reasoned that the burglary occurred "very close in time" to the theft of the Ford Explorer and that the "whole picture" was relevant. 2 RP at 97-98.

During closing argument, the State argued that Bowen was "caught red-handed in a stolen vehicle filled with stolen property." 3 RP at 347. The prosecutor argued that Bowen was found

---

[5] There was no testimony at trial to support that the Ford Explorer was ransacked.

driving the vehicle and that the vehicle was stolen. Bowen made statements that indicated his "consciousness of guilt," such as that he borrowed the truck to move things and that he knew Kevin and was going to meet Kevin in the morning at his house. 3 RP at 365. Bowen had both sets of keys to the vehicle, which were stolen from Kevin's home. The prosecutor asked the jury to consider, who would loan a vehicle and give the person both sets of keys. "Why would he have both sets of keys if it's this passing control?" 3 RP at 360, 367.

The prosecutor also argued,

This burglary occurred in an unoccupied residence. The defendant is sitting here in a stolen vehicle that the State contends he knew was stolen. The burglary occurred in an unoccupied home. Who knows when that burglary is going to be reported.

What's the best thing that you can say if you know those two things? If you're the defendant and you know that the burglary occurred at an unoccupied residence and the burglary might not have been reported yet—the officer might not know—the best thing you can say is you know the owner. You know Kevin Kinslow.

Your vehicle is obviously packed with stuff. It's packed with stuff. That's great. You're going to meet him tomorrow. You know that the officer may not know that.

3 RP at 366.

The prosecutor then stated that significant circumstantial evidence existed to demonstrate Bowen's involvement in the burglaries. She pointed to the contents of the vehicle, the timeline of the thefts, and the location of the thefts. She stated the importance of all the circumstantial evidence that indicated Bowen was involved in taking the property and the vehicle, and that he knew that both were stolen. And, she also argued that "[h]e knew the vehicle was stolen based on his statements and based on all the evidence that was discovered within the vehicle." 3 RP at 369.

Turning to the stolen property, the prosecutor contended,

> [T]his particular element of knowingly possessing stolen property relies more heavily on the defendant's statement that he borrowed the vehicle to move some stuff.
>
> That's extremely important, given that the vehicle is filled with stolen property, property that can be confirmed to be stolen, including the welders that were easily visible because of their size. So that is extremely important.
>
> He's claiming that he—that he—that stuff in the vehicle is his.

3 RP at 371.

The defense argued that Bowen borrowed the vehicle from someone he did not really know and had no knowledge that it or the items inside were stolen. During the trial, the defense called two witnesses. First, Bowen's mother testified that the night Bowen was arrested he had previously been at her home for a wake. She testified that she asked Bowen to drive her granddaughter but Bowen's vehicle was blocked in by the people attending the wake. Then, someone she did not know, but whom she thought was named Jamie, told Bowen that Bowen could take his vehicle. She believed her son and Jamie knew each other because the man loaned Bowen a vehicle.

A friend of the family also testified. He stated that he attended the wake. He saw Bowen's vehicle was blocked in and that Bowen could not get out. He testified that someone who he did not know, but that he had seen once or twice previously, offered Bowen his keys.

The jury found Bowen guilty of possession of a stolen vehicle and possession of stolen property in the second degree. At sentencing, the court sentenced Bowen to 93 months of confinement, to be served consecutive to his sentence in another case. The court imposed 12

months of community custody. The court also imposed a $500 Victim Penalty Assessment fee; a $1,135 court appointed attorney fee; a $200 criminal filing fee; a $100 DNA collection fee; a $2,000 fine for drug crimes, under RCW 69.50.430; a $500 contribution to SIU-Kitsap County Sheriff's Office, under RCW 9.94A.030, 9.94A.760; and, a $100 contribution to Kitsap County Expert Witness Fund, under Kitsap County Ordinance 139.1991. Bowen appeals.

## ANALYSIS

I. CHARGING DOCUMENT

Bowen argues that the charging document failed to include all the essential elements for possession of a stolen vehicle and possession of stolen property in the second degree and was therefore deficient. We disagree.

A. Standard of Review

A defendant has a constitutional right to be informed of the nature and cause of the charges against him. U.S. CONST. amend. VI; WASH. CONST. art. 1 § 22. We review a charging document's adequacy de novo. *State v. Johnson*, 180 Wn.2d 295, 300, 325 P.3d 135 (2014). To be constitutionally adequate, a charging document must contain all essential elements of a crime, statutory and nonstatutory, to give the accused notice of the charges and to allow the accused to prepare a defense. *State v. Winings*, 126 Wn. App. 75, 84, 107 P.3d 141 (2005). In addition to identifying the crime charged, a charging document must "'allege facts supporting every element of the offense.'" *City of Seattle v. Termain*, 124 Wn. App. 798, 802, 102 P.3d 183 (2004) (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 98, 812 P.2d 86 (1991)). "Words in a charging document are read as a whole, construed according to common sense, and include facts which are necessarily implied." *Kjorsvik*, 117 Wn.2d at 109.

If a defendant challenges the charging document's sufficiency for the first time on appeal, we construe the document liberally in favor of its validity. *State v. Tresenriter*, 101 Wn. App. 486, 491, 4 P.3d 145, 14 P.3d 788 (2000). We will determine that the document is sufficient if the necessary elements appear in any form, or by fair construction may be found, on the document's face. *State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d 296 (2000). We must decide if the language of the document provided some notice of the missing elements and whether there was actual prejudice to the defendant. *City of Bothell v. Kaiser*, 152 Wn. App. 466, 471-72, 217 P.3d 339 (2009). However, we reach the question of actual prejudice only if we determine that the information contains the essential elements of the crime charged. *State v. Greathouse*, 113 Wn. App. 889, 900, 56 P.3d 569 (2002).

B.       Possession of a Stolen Vehicle

Bowen argues that the charging document failed to include all essential elements of the crime of possession of a stolen vehicle and failed to include language describing the stolen vehicle.

First, even though the State concedes that the charging document lacked the essential element of "withhold or appropriate,"[6] Br. of Resp't at 7, our Supreme Court recently ruled to the contrary in *State v. Porter*, No. 92060-5, 2016 WL 3910995 (Wash. July 14, 2016). The court held, "The State was not required to include language specifying that [the appellant] withheld the vehicle from the true owner, as such language merely defines and limits the scope of the crime of possession of a stolen motor vehicle." *Porter*, 2016 WL 3910995, at *1. Therefore, we conclude the information here contained the essential elements.

---

[6] Along with this concession which the State based on *State v. Satterthwaite*, 186 Wn. App. 359, 365, 344 P.3d 738 (2015), the State argued Bowen was not prejudiced. Because of our resolution of this issue, we need not address prejudice.

Second, the charging document sufficiently described the crime charged. Construing the document liberally, Bowen had notice of the charge. *See Tresenriter*, 101 Wn. App. at 491. Bowen did not object to the charging document and he raises the issue for the first time on appeal. The count stated that Bowen knowingly possessed a vehicle on March 8, 2014, and that the police stopped Bowen in a vehicle that was reported stolen on that date. Furthermore, if Bowen wanted more specificity, he could have requested a bill of particulars. *See Tresenriter*, 101 Wn. App. at 495; *see also State v. Holt*, 104 Wn.2d 315, 320, 704 P.2d 1189 (1985) ("if the information states each statutory element of a crime, but is vague as to some other matter significant to the defense, a bill of particulars is capable of correcting that defect. In that event, a defendant is not entitled to challenge the information on appeal if he failed to request the bill of particulars at an earlier time."). Bowen also has not demonstrated prejudice. We conclude the charging document for possession of a stolen vehicle count was not deficient

C.    Possession of Stolen Property

Bowen also argues that the possession of stolen property count in the charging document was deficient because it failed to include any language describing the stolen property. He contends that the information lacked "case-specific facts" and as a result, did not protect him from double jeopardy. Br. of Appellant at 10-11.

In *Tresenriter*, the information charging possession of stolen property sufficiently alleged the elements of the crime. 101 Wn. App. at 495. The language in that case read, "In that the defendant, MICHAEL JAY TRESENRITER, . . . did knowingly possess property of a value greater than $250 knowing it was stolen." *Tresenriter*, 101 Wn. App at 494. We determined that neither the property itself, the location of the property, nor the property's connection to other

11

crimes charged were elements of the crime. *Tresenriter*, 101 Wn. App. at 495. As a result, we did not find the charging document deficient. *Tresenriter*, 101 Wn. App. at 495.

Here, Bowen argues that the language for the charge against him needed to include a specific description of the property in his possession. The language in the charging document stated that on March 8, Bowen "knowingly receive[d], retain[ed], possess[ed], conceal[ed], or dispose[ed] of stolen property, knowing that it had been stolen, and did withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto." CP at 2. It also stated that the value of the property exceeded $750.

Bowen did not object to the charging document and he raises the issue for the first time on appeal. We previously held in *Tresenriter* that identifying the property itself was not an element of possession of stolen property. 101 Wn. App. at 495. Following that decision, we conclude the charging language in Bowen's case provided all the essential elements of the offense. Furthermore, if Bowen wanted more specificity, he should have requested a bill of particulars. *See Tresenriter*, 101 Wn. App. at 495; *see also Holt*, 104 Wn.2d at 320. We conclude that the charging document was sufficient.

II.    BURGLARY AND THEFT EVIDENCE

Bowen argues the trial court erred by admitting evidence of the prior burglary at Kevin's home and the additional two vehicle thefts because the evidence was irrelevant and prejudicial. We disagree as to the burglary, and conclude the erroneous admission of the theft evidence was harmless.

A.      Standard of Review

We review a trial court's decision to admit evidence for abuse of discretion. *Diaz v. State*, 175 Wn.2d 457, 462, 285 P.3d 873 (2012). A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007). A trial court also abuses its discretion when it relies on unsupported facts, takes a view that no reasonable person would take, applies an incorrect legal standard, or bases its ruling on an erroneous legal view. *Lord*, 161 Wn.2d at 284.

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The threshold to admit relevant evidence is very low and even minimally relevant evidence is admissible. *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). However, irrelevant evidence is not admissible. ER 402. A trial court may also exclude relevant evidence if its probative value is substantially outweighed by the risk of unfair prejudice. ER 403. An evidentiary error that is not of constitutional magnitude requires reversal only if there is a reasonable probability that it materially affected the outcome of the trial. *State v. Briejer*, 172 Wn. App. 209, 228, 289 P.3d 698 (2012).

B.     Admissibility

Bowen argues that the evidence was inadmissible under ER 402, ER 403, and ER 404(b). However, at trial, Bowen only objected to admission of the evidence based on relevance.[7] Therefore, we confine our review to the argument made in the trial court. "A party may assign error to the appellate court on only the specific ground of evidentiary objection made at trial." *State v. Lile*, 193 Wn. App. 179, 204-05, 373 P.3d 247 (2016). An objection to admission of evidence on other grounds does not preserve the issue for appeal. *State v. Kirkman,* 159 Wn.2d 918, 926, 155 P.3d 125 (2007); *see also State v. Kendrick*, 47 Wn. App. 620, 634, 736 P.2d 1079 (1987) (relevancy objection does not preserve ER 404(b) review); *State v. Fredrick*, 45 Wn. App. 916, 922-23 n.3, 729 P.2d 56 (1986) (an ER 401 objection is insufficient to preserve appellate review on ER 403 grounds). The ER 404(b) arguments are not preserved.

Before the State called its first witness, Bowen moved to exclude evidence of the burglary and the theft of the other two vehicles. He argued that the burglary and the theft were not relevant to proving any fact in dispute. The court ruled the testimony about the prior burglary and the theft of the vehicles was admissible "based upon the res gestae presentation of the State's case." 2 RP at 97. It reasoned that the burglary and theft of the other vehicles occurred "very close in time" to the theft of the Ford Explorer and that the "whole picture" was relevant. 2 RP at 97-98.

---

[7] Pretrial, Bowen moved to exclude all ER 404(b) evidence. The written motion addressed exclusion of ER 404(b) evidence, "including any criminal convictions, license suspensions, prior arrests, outstanding warrants, and allegations of drug use." CP at 33. It sought to exclude "any reference to the drugs found in [Bowen's] possession on March 8, 2014, if he pleads guilty to that count prior to the commencement of trial." CP at 33. The State provided that it did not intend to elicit that evidence and the court granted the motion. Despite the agreed motion to not admit 404(b) evidence, and the court's granting of the motion, the only objection to the evidence challenged here at trial was on relevancy grounds. Therefore, we only review it on that basis.

14

We conclude that the trial court did not abuse its discretion by ruling the burglary evidence admissible because the evidence was relevant. Relevance is a very low bar. *Darden*, 145 Wn.2d at 621. To prove possession of stolen property, the State had to establish beyond a reasonable doubt that "the defendant possessed the property, that the property was in fact stolen, and that the defendant knew the property was stolen." *State v. Plank*, 46 Wn. App. 728, 731, 731 P.2d 1170 (1987). Therefore, establishing that the Ford Explorer and items found within the vehicle were in fact stolen items was necessary and evidence that went to proving this element was relevant. The evidence also went to Bowen's knowledge that the vehicle and items were stolen.

However, the theft of the other two vehicles evidence was not relevant. There was no evidence to connect the two vehicles to the Ford Explorer. The trial court abused its discretion by ruling the theft evidence was admissible.

We next determine whether the trial court's error was harmless. In making this determination, we assess whether the result would have been the same even if the trial court had not admitted the evidence. *State v. Carleton*, 82 Wn. App. 680, 686, 919 P.2d 128 (1996). Evidentiary error requires reversal only if there is a reasonable probability that it materially affected the outcome of the trial. *Briejer*, 172 Wn. App. at 228.

Bowen argues that because the prosecutor emphasized the evidence during closing argument, there is a reasonable probability the outcome of the trial would have been different without the error. We conclude that admission of the evidence did not materially affect the outcome of the trial. The prosecutor did not focus on the thefts but on the initial burglary, which was relevant. The State also presented evidence that proved the Ford Explorer and the items within

15

it, were stolen. Furthermore, the State offered, and the court admitted, Bowen's statements when he was pulled over that indicated his knowledge the vehicle and property were stolen. The evidence taken as a whole was such that a reasonable jury could convict Bowen, without the contested theft of the other vehicles evidence. Therefore, we conclude that any error was harmless.

C.     Propensity Evidence

Bowen also contends that the trial court's error in admitting the evidence violated his due process rights. Specifically, he argues that his conviction was based on propensity evidence. Bowen asserts that the propensity evidence encouraged the jury to find him guilty because it would assume he was more likely to know the vehicle and items were stolen because he had stolen before.[8] First, asserting an argument in constitutional terms does not change the applicable standard of review. *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013). Second, this argument is reliant on the conclusion that the evidence was brought in as inadmissible propensity evidence. As there is no such conclusion, Bowen's argument fails.

Bowen also did not raise this issue below. However, Bowen contends that he is entitled to our review because "[a] violation of due process that has practical and identifiable consequences is a manifest error affecting the accused person's constitutional right." Br. of Appellant at 17 n.7. Bowen has not established error, much less a violation of his due process right.

The prosecutor did not argue that the theft of the two vehicles before March 7 proved Bowen's guilt, but that all the circumstantial evidence proved his knowledge that the vehicle and

---

[8] The State did not present direct evidence that Bowen committed the prior burglary and thefts. The State did touch on the issue during closing by arguing that Bowen was "caught red-handed in a stolen vehicle filled with stolen property." 3 RP at 347. The State also argued that there was "significant circumstantial evidence that [Bowen] was involved in the burglaries" and that his behavior after being stopped demonstrated he knew the items were stolen. 3 RP at 366. The State's argument relied solely on admissible circumstantial evidence.

16

items were stolen. The State argued there was "significant circumstantial evidence that [Bowen] was involved in the burglaries." 3 RP at 366. The prosecutor argued that Bowen was found driving the vehicle and that the vehicle was stolen. She relied on Bowen's statements to indicate his "consciousness of guilt." 3 RP at 365. These statements included that he borrowed the truck to move things, that he knew Kevin Kinslow, and that he was going to meet Kevin in the morning at Kevin's house, Bowen had both sets of keys to the vehicle, both were stolen from Kevin's home, and the prosecutor asked, "Why would [Bowen] have both sets of keys if it's passing control?" 3 RP at 360, 367.

The prosecutor argued,

This burglary occurred in an unoccupied residence. [Bowen] is sitting here in a stolen vehicle that the State contends he knew was stolen. The burglary occurred in an unoccupied home. Who knows when that burglary is going to be reported.
What's the best thing that you can say if you know those two things? If you're [Bowen] and you know that the burglary occurred at an unoccupied residence and the burglary might not have been reported yet—the officer might not know—the best thing you can say is you know the owner. You know Kevin Kinslow.
Your vehicle is obviously packed with stuff. It's packed with stuff. That's great. You're going to meet him tomorrow. You know that the officer may not know that.

3 RP at 366.

Additionally, the prosecutor argued, "All of this is circumstantial evidence that [Bowen] is involved in the thefts and knows that this is stolen, and that's really the question here." 3 RP at 368. And also, "He knew the vehicle was stolen based on his statements and based on all the evidence that was discovered within the vehicle." 3 RP at 369. Turning to the stolen property, the prosecutor contended,

17

> [T]his particular element of knowingly possessing stolen property relies more heavily on [Bowen's] statement that he borrowed the vehicle to move some stuff.
>
> That's extremely important, given that the vehicle is filled with stolen property, property that can be confirmed to be stolen, including the welders that were easily visible because of their size. So that is extremely important.
>
> [Bowen's] claiming that he—that he—that stuff in the vehicle is his.

3 RP at 371.

Because Bowen fails to show his conviction was based on propensity evidence, rather than properly admitted evidence, we conclude his argument fails.

III.    INEFFECTIVE ASSISTANCE OF COUNSEL

Bowen argues that he received ineffective assistance of counsel because his attorney did not object to the admission of drug paraphernalia found in the vehicle. He contends that the evidence was inadmissible and highly prejudicial. We disagree.

A.    Standard of Review

We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prove ineffective assistance of counsel, an appellant must show that (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness and that (2) the deficient performance prejudiced him, to the extent that there is a reasonable probability the deficient performance affected the outcome of the trial. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668, 700, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Competency of counsel is determined based upon the entire record below. *State v. White*, 81 Wn.2d 223, 225, 500 P.2d 1242 (1972). An appellant faces a strong presumption that counsel's representation was effective. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel.

18

*State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). "However, there is a sufficient basis to rebut such a presumption where there is no conceivable legitimate tactic explaining counsel's performance. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). "Where a claim of ineffective assistance of counsel rests on trial counsel's failure to object, a defendant must show that an objection would likely have been sustained." *State v. Fortun-Cebada*, 158 Wn. App. 158, 172, 241 P.3d 800 (2010).

B.      Failure to Object

Bowen argues the evidence of drug paraphernalia in the vehicle was not relevant and was highly prejudicial and thus, his counsel should have objected. Furthermore, Bowen contends that the evidence was inadmissible as uncharged misconduct under ER 404(b).

To prevail, Bowen must demonstrate prejudice. *See Thomas*, 109 Wn.2d at 225-26. Bowen argues that an objection would have been sustained and that there is a reasonable probability that his attorney's failure to object impacted the outcome of the trial. He contends that because the State offered testimony that the paraphernalia demonstrated someone who had been in the vehicle was a methamphetamine user, the jury was encouraged to infer Bowen was a drug user and more likely to have stolen or knowingly possessed the stolen items.

First, we conclude that the drug paraphernalia evidence was relevant. Additionally, although Bowen argues that the drug paraphernalia evidence did not help his case, he does not argue why the court would not have admitted it had defense counsel objected. Bowen does not provide argument for why the court would have sustained an objection based on prejudice or propensity. He only argues a general prejudice existed but provides no specificity.

To establish prejudice, Bowen needed to demonstrate that his objection would have been sustained. *See Fortun-Cebada*, 158 Wn. App. at 172. Because he fails to do so, and because there was other overwhelming evidence from which a reasonable jury could find guilt, Bowen cannot demonstrate prejudice. We conclude his ineffective assistance of counsel claim fails.

IV. GUILTY PLEA

Bowen argues that there was an insufficient factual basis for his guilty plea to possession of a controlled substance.[9] We disagree.

A. Standard of Review and Legal Principles

We review the circumstances under which a defendant entered a guilty plea de novo. *Young v. Konz*, 91 Wn.2d 532, 536, 588 P.2d 1360 (1979). A defendant has the right to plead guilty pursuant to CrR 4.2. *State v. Hubbard*, 106 Wn. App. 149, 153, 22 P.3d 296 (2001). A guilty plea must be voluntarily, knowingly, and intelligently made. *Hubbard*, 106 Wn. App. at 151. Even where a defendant does not admit guilt, CrR 4.2(d) requires the trial court to find that a factual basis exists to support the plea. *State v. Sheng Zhao*, 157 Wn.2d 188, 198, 137 P.3d 835 (2006).

> The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

CrR 4.2(d).

---

[9] Bowen does not assign error to his guilty plea. He does, however, articulate an argument with citations to law and fact in his brief. For this reason, despite his failure to assign error, we consider the issue. *See State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995) ("where the nature of the appeal is clear and the relevant issues are argued in the body of the brief and citations are supplied so that the Court is not greatly inconvenienced and the respondent is not prejudiced, there is no compelling reason for the appellate court not to exercise its discretion to consider the merits of the case or issue").

A trial court is not expressly precluded from finding sufficient factual basis based on the original charges. *Zhao*, 157 Wn.2d at 198. Additionally, "'[t]he factual basis requirement of CrR 4.2(d) does not mean the trial court must be convinced beyond a reasonable doubt that defendant is in fact guilty;' there must only be sufficient evidence, from any reliable source, for a jury to find guilt." *Zhao*, 157 Wn.2d at 198 (quoting *State v. Newton*, 87 Wn.2d 363, 370, 552 P.2d 682 (1976)). "When a defendant completes a plea statement and admits to reading, understanding, and signing it, this creates a strong presumption that the plea is voluntary." *State v. S.M.*, 100 Wn. App. 401, 413-14, 996 P.2d 1111 (2000). The factual basis for the plea may come from any source the trial court finds reliable, and not just the defendant's admissions. *Newton*, 87 Wn.2d at 370.

B.      Sufficient Factual Basis

Bowen argues that an insufficient factual basis existed for his plea of guilty because the probable cause statement on which the court relied merely stated that the substance seized from him field tested positive for methamphetamine. Outside of arguing it lacked a factual basis, Bowen does not argue that his plea was otherwise involuntary.

In making his argument, Bowen relies on *State v. Colquitt*, 133 Wn. App. 789, 137 P.3d 892 (2006). However, Bowen's reliance on this case is misplaced. The trial court in *Colquitt* terminated Colquitt from drug court. 133 Wn. App. at 794. Per his agreement with drug court, Colquitt then proceeded to a bench trial. *Colquitt*, 133 Wn. App. at 793. He had stipulated to the admission of the police report as the sole evidence the court would consider. *Colquitt*, 133 Wn. App. at 793. The police report stated that the substance seized from him field tested positive for cocaine. *Colquitt*, 133 Wn. App. at 792. The court held that this evidence alone was insufficient to support a verdict of guilt. *Colquitt*, 133 Wn. App. at 792.

21

However, in so ruling, the *Colquitt* court recognized that a trial on stipulated evidence, whether because of a drug court contract or a deferred prosecution, is different from a plea of guilty. 133 Wn. App. at 795. This distinction has also been recognized repeatedly. In *State v. Mierz*, 127 Wn.2d 460, 469, 901 P.2d 286 (1995), the court pointed out many of the dissimilarities between a stipulated facts trial and a guilty plea. Likewise, in *State v. Drum*, 168 Wn.2d 23, 39, 225 P.3d 237 (2010), the court noted that a stipulated facts trial is not the same as a guilty plea. The court said, "We have previously held that a stipulated facts trial, where the trial court independently reviews the evidence and makes its own findings, is not the equivalent of a guilty plea." *Drum*, 168 Wn.2d at 39.

Here, Bowen pleaded guilty to possession of a controlled substance without any plea agreement. Bowen was still proceeding to trial on other charges and moved to exclude the methamphetamine evidence if he pleaded guilty. The court later ruled the jury would not hear the evidence of the methamphetamine. The court engaged in a colloquy with Bowen to confirm he understood the consequences of entering a guilty plea. Bowen understood the charge and wanted to plead guilty. He did so on counsel's advice. Bowen reviewed the pleadings with his attorney and signed the statement of defendant on plea of guilty. Bowen understood all the rights he was giving up. He understood the maximum sentence. The court reviewed the probable cause statement, which said the substance field tested positive for methamphetamine. When asked how he plead, Bowen responded, "Guilty." 1 RP at 22.

Bowen also contends his plea was an *Alford* plea. We disagree. "'In an Alford plea, the defendant does not admit guilt but concedes that a jury would most likely convict him based on the strength of the State's evidence.'" *State v. MacDonald*, 183 Wn.2d 1, 6 n.1, 346 P.3d 748 (2015) (quoting *State v. Scott*, 150 Wn. App. 281, 294-95, 207 P.3d 495 (2009)). Bowen's plea

was neither an *Alford* nor a *Newton* plea. He admitted guilt and did not maintain his innocence. Bowen did not concede a jury would convict him based on the strength of the State's evidence.

We conclude that Bowen's voluntary admission of guilt, coupled with the statement that the substance seized from Bowen field tested positive for methamphetamine, provides a sufficient factual basis for Bowen's guilty plea.

## V.     LFOs AND COSTS

Bowen argues that the trial court erred by imposing LFOs in violation of its statutory authority.[10] We agree in part.

### A.     Standard of Review

We may use our discretion to review unpreserved claims of error. RAP 2.5(a)(3); *State v. Blazina*, 182 Wn.2d 827, 830, 344 P.3d 680 (2015). "Unpreserved LFO errors do not command review as a matter of right." *Blazina*, 182 Wn.2d at 833. We may also exercise our discretion to consider appellate costs during the course of appellate review. *State v. Sinclair*, 192 Wn. App. 380, 389, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016).

### B.     Individualized Inquiry

Bowen first argues that the trial court erred by imposing LFOs without conducting an individualized inquiry into his ability to pay. We agree. Bowen did not object to the imposition of discretionary LFOs. However, we exercise our discretion to remand the case to the trial court to conduct a proper individualized inquiry into his ability to pay on the record.

---

[10] Bowen does not distinguish between mandatory and discretionary LFOs. We only review the imposition of discretionary LFOs. *State v. Blazina*, 182 Wn.2d 827, 830, 344 P.3d 680 (2015).

C.	Kitsap County Sheriff's Office and Expert Witness Fund

Bowen also argues the trial court erred by ordering him to pay LFOs not authorized by statute. He contends that the costs are not "'specially incurred by the state in prosecuting' [him]." Br. of Appellant at 28 (quoting RCW 10.01.160(2)). These costs are discretionary LFOs: a sheriff's department fee and an expert witness fund fee. Bowen did not object to their imposition. Additionally, Bowen does not argue in what way the costs were not authorized by statute. Bowen also does not actually assert in his briefing that the sheriff's department did not incur costs or that no expert witnesses were used. However, we do not reach the issue because we remand to the trial court to conduct an individualized inquiry into Bowen's present and future ability to pay discretionary LFOs.

D.	Appellate Costs

Bowen has also filed a supplemental brief relying on *Sinclair*, 192 Wn. App. at 389. The State has not yet responded and has not filed a cost bill. The trial court found Bowen indigent at the beginning and end of trial. There is no evidence that Bowen's status has or will change. Appellate costs will not be awarded.

We affirm Bowen's conviction for unlawful possession of a vehicle, unlawful possession of stolen property in the second degree, and unlawful possession of a controlled substance. We remand to the trial court to conduct an individualized inquiry into Bowen's ability to pay the imposed LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Johanson, P.J.

_____
Sutton, J.